## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

_____

|  |  |  |
|---|---|---|
| PRO-TEAM COIL ENTERPRISE INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| UNICATCH INDUSTRIAL CO., LTD., | ) | |
| TC INTERNATIONAL, INC., HOR LIANG | ) | |
| INDUSTRIAL CORP., ROMP COIL NAILS | ) | |
| INDUSTRIAL INC., AND PRIMESOURCE | ) | |
| BUILDING PRODUCTS, INC. | ) | |
| | ) | |
| Consolidated Plaintiffs, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| S.T.O. INDUSTRIES, INC., | ) | |
| | ) | |
| Plaintiff-Intervenor, | ) | |
| | ) | |
| v. | ) | Consol. Court No. 18-00027 |
| | ) | PUBLIC VERSION |
| UNITED STATES, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| MID CONTINENT STEEL & WIRE, INC., | ) | |
| | ) | |
| Defendant-Intervenor. | ) | |

_____)

## DEFENDANT'S RESPONSE TO THE PARTIES' COMMENTS ON THE DEPARTMENT OF COMMERCE'S FINAL RESULTS OF REDETERMINATION

BRIAN M. BOYNTON
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

PATRICIA M. MCCARTHY
Assistant Director

Sosun Bae
Senior Trial Attorney
U.S. Department of Justice
Commercial Litigation Branch
Civil Division
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 305-7568

OF COUNSEL

JARED CYNAMON
Attorney
U.S. Department of Commerce
Office of the Chief Counsel
for Trade Enforcement and Compliance

June 1, 2021

Attorneys for Defendant

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ...................................................................................................ii

BACKGROUND ..............................................................................................................2

ARGUMENT ...................................................................................................................4

    I.      Standard Of Review .......................................................................4

    II.     Commerce More Than Adequately Corroborated The Petition Margin ...............4

         A.     Relevant Legal Framework ...................................................5

         B.     Unicatch Fails To Demonstrate That Commerce's Corroboration Should Not Be Sustained ...................................................6

    III.    The 78.17 Percent Rate Is Not Punitive ...........................................11

    IV.    The Court Should Sustain Commerce's Application Of The All-Others Rate .....15

         A.     Relevant Legal Framework ...................................................15

         B.     Hor Liang And Romp Still Fail To Establish That The All-Others Rate Is Not Reasonably Reflective ...................................................16

         C.     Commerce Appropriately Included Bonuts's AFA Rate In Its Calculation ...................................................21

         D.     Commerce Properly Used A Simple Average .......................................22

CONCLUSION ...............................................................................................................23

# TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE(S)**

*Albemarle Corp. & Subsidiaries v. United States,*
    821 F.3d 1345 (Fed. Cir. 2016) ................................................................ 16, 17

*Amanda Foods (Vietnam) Ltd. v. United States,*
    774 F. Supp. 2d 1286 (Ct. Int'l Trade 2011) ................................................ 4

*Bethlehem Steel Corp. v. United States,*
    223 F. Supp. 2d 1372 (Ct. Int'l Trade 2002) ............................................... 4

*Bosun Tools Co., Ltd. v. United States,*
    493 F. Supp. 3d 1351 (Ct. Int'l Trade 2021) ............................................. 20

*Bosun Tools Co v. United States,*
    463 F. Supp. 3d 1308 (Ct. Int'l Trade 2020) ............................................. 20

*Changzhou Wujin Fine Chem. Factory Co., Ltd. v. United States,*
    701 F.3d 1367 (Fed. Cir. 2012) ................................................................. 20

*Deacero S.A.P.I. de C.V. v. United States,*
    No. 2020-1918, --- F.3d ---, 2021 WL 1705599 (Fed. Cir. Apr. 30, 2021) .............. 6, 11

*Diamond Sawblades Mfrs.' Coal v. United States,*
    415 F. Supp. 3d 1365 (Ct. Int'l Trade 2019) ..................................... 12, 13, 14

*Essar Steel, Ltd. v. United States,*
    753 F.3d 1368 (Fed. Cir. 2014) ................................................................ 12

*Filippo Fara S. Martino S.p.A. v. United States,*
    216 F.3d 1027 (Fed. Cir. 2000) ................................................................ 12

*Hor Liang Indus. Corp., et al. v. United States,*
    337 F. Supp. 3d 1310 (Ct. Int'l Trade 2018) ............................................. 16

*Hubbell Power Sys. v. United States,*
    No. 15-00312, 2019 WL 6174713 (Ct. Int'l Trade Nov. 20, 2019) ................. 14

*Nan Ya Plastics Corp. v. United States,*
    810 F.3d 1333 (Fed. Cir. 2016) ............................................................. 9, 11

*Nippon Steel Corp. v. United States,*
    337 F. 3d 1373 (Fed. Cir. 2003) .............................................................. 12

*NSK Ltd. v. United States*,
    481 F. 3d 1355 (Fed. Cir. 2007) ........................................................................12

*NTN Corp. v United States*,
    587 F. Supp. 2d 1313 (Ct. Int'l Trade 2008) ..................................................22

*PAM, S.p.A. v. United States*,
    582 F.3d 1336 (Fed. Cir. 2009) ....................................................................9, 10

*Papierfabrik August Koehler AG v. United States*,
    180 F. Supp. 3d 1211 (Ct. Int'l Trade 2016) ..................................................7, 8

*Papierfabrik August Koehler AG v. United States*,
    843 F.3d 1373 (Fed. Cir. 2016) ................................................................8, 9, 11

*PSC VSMPO-AVISMA Corp. v. United States*,
    498 Fed. Appx. 995 (Fed. Cir. 2013) ................................................................9

*Qingdao Qihang Tyre Co. v. United States*,
    308 F. Supp. 3d 1329 (Ct. Int'l Trade 2018) ..................................................17

*Solianus, Inc. v. United States*,
    391 F. Supp. 3d 1331, (Ct. Int'l Trade 2019) ................................................23

*Ta Chen Stainless Steel Pipe, Inc. v. United States*,
    298 F.3d 1330 (Fed. Cir. 2002) ......................................................................10

*Viet I-Mei Frozen Foods Co. v. United States*,
    839 F. 3d 1099 (Fed. Cir. 2016) ................................................................12, 14

*Yangzhou Bestpak Gifts & Crafts Co. v. United States*,
    716 F.3d 1370 (Ct. Int'l Trade 2013) ........................................................22, 23

*YC Rubber Co. (North America) LLC v. United States*,
    487 F. Supp. 3d 1367 (Ct. Int'l Trade 2020) ..................................................19

*Zhaoqing Tifo New Fibre Co. v. United States*,
    256 F. Supp. 3d 1314 (Ct. Int'l Trade 2017) ..................................................16

## STATUTES

19 U.S.C. § 1673d(c)(5)(A)-(B) ................................................................15, 16, 22

19 U.S.C. § 1675(h) ................................................................................................22

19 U.S.C. § 1677 .................................................................................5, 6, 15, 21

## REGULATIONS

82 Fed. Reg. 36,744 (Dep't of Commerce Aug. 7, 2017) ..........................................................14

*Multilayered Wood Flooring from the People's Republic of China*,
    84 Fed. Reg. 38,002 (Dep't of Commerce Aug. 5, 2019) ................................................23

*Polyester Textured Yarn from India*,
    84 Fed. Reg. 63,843 (Dep't of Commerce Nov. 19, 2019) ................................................6

*Prestressed Concrete Steel Wire Strand from Indonesia*,
    86 Fed. Reg. 18.495 (Dep't of Commerce Apr. 9, 2021) .................................................6

*Certain Walk-Behind Lawn Mowers and Parts Thereof from the People's Republic of China*,
    86 Fed. Reg. 27,379 (Dep't of Commerce May 20, 2021) ...............................................6

## OTHER AUTHORITIES

1994 U.S.C.C.A.N. 4040 ....................................................................................................5

**UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE:  THE HONORABLE MARK A. BARNETT, CHIEF JUDGE
_____
|   |   |
|---|---|
| PRO-TEAM COIL ENTERPRISE INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| UNICATCH INDUSTRIAL CO., LTD., | ) |
| TC INTERNATIONAL, INC., HOR LIANG | ) |
| INDUSTRIAL CORP., ROMP COIL NAILS | ) |
| INDUSTRIAL INC., AND PRIMESOURCE | ) |
| BUILDING PRODUCTS, INC. | ) |
| | ) |
| Consolidated  Plaintiffs, | ) |
| | ) |
| and | )    Consol. Court No. 18-00027 |
| | ) |
| S.T.O. INDUSTRIES, INC., | ) |
| | ) |
| Plaintiff-Intervenor, | ) |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES, | ) |
| | ) |
| Defendant, | ) |
| | ) |
| and | ) |
| | ) |
| MID CONTINENT STEEL & WIRE, INC., | ) |
| | ) |
| Defendant-Intervenor. | ) |

_____)

## <u>ORDER</u>

Upon consideration  of plaintiffs'  comments regarding the remand redetermination, defendant's response thereto, and all other pertinent papers, it is hereby

ORDERED that the remand redetermination  is sustained

AND final judgment  is entered in favor of the United States.

Date:_____                              _____
     New York, NY                                     Chief Judge

**UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE:  THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

_____

|  |  |  |
|---|---|---|
| PRO-TEAM COIL ENTERPRISE INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| UNICATCH INDUSTRIAL CO., LTD., | ) | |
| TC INTERNATIONAL, INC., HOR LIANG | ) | |
| INDUSTRIAL CORP., ROMP COIL NAILS | ) | |
| INDUSTRIAL INC., AND PRIMESOURCE | ) | |
| BUILDING PRODUCTS, INC. | ) | |
| | ) | |
| Consolidated Plaintiffs, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| S.T.O. INDUSTRIES, INC., | ) | |
| | ) | |
| Plaintiff-Intervenor, | ) | |
| | ) | |
| v. | ) | Consol. Court No. 18-00027 |
| | ) | ██████████████████████ |
| UNITED STATES, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| MID CONTINENT STEEL & WIRE, INC., | ) | |
| | ) | |
| Defendant-Intervenor. | ) | |

_____)

**DEFENDANT'S RESPONSE TO THE PARTIES' COMMENTS ON THE
DEPARTMENT OF COMMERCE'S FINAL RESULTS OF REDETERMINATION**

Defendant, the United States, respectfully submits this response to the comments

submitted by plaintiffs Unicatch Industrial Co., Ltd. and TC International, Inc. (collectively,

Unicatch), and Hor Liang Industrial Corp. (Hor Liang) and Romp Coil Nails Industries Inc.

(Romp) concerning the Final Results of Redetermination Pursuant to Court Remand (second remand redetermination), ECF No. 100, issued by the Department of Commerce (Commerce) pursuant to the opinion and remand order of this Court. *See Pro-Team Coil Nail Enterprise, Inc., et. al. v. United States,* Court No. 18-00027, Slip Op. 20-163, ECF No. 96 (Ct. Int'l Trade Nov. 16, 2020) (second remand order). As discussed below, Commerce's second remand redetermination fully complies with the Court's second remand order, and plaintiffs cannot demonstrate that the redetermination is unlawful or unsupported by substantial evidence. Accordingly, the Court should sustain the second remand redetermination.

## BACKGROUND

In its second remand order, the Court explicitly upheld Commerce's decision to apply adverse facts available (AFA) to Unicatch, but remanded Commerce's selection of the 78.17 percent rate, derived from the petition, because it had held that Commerce did not adequately corroborate the rate. The Court stated that "Commerce's determination that the petition rate is reliable and relevant for purposes of this administrative review, based on nothing more than its pre-initiation review of the data, is unsupported by substantial evidence" and ordered Commerce to "reconsider or further explain its corroboration of the petition rate." Second Remand Order at 17. The Court also noted that "Commerce largely ignored Unicatch's arguments that the 78.17 percent rate was punitive, aberrational, and lacking consideration of the totality of the circumstances or the seriousness of Unicatch's conduct" but deferred further consideration of these arguments. *Id.* at 17-18. Finally, the Court also deferred resolution of Commerce's calculation of the rate assigned to non-examined companies, *i.e.*, the "all-others" rate. *See id.* at 19.

2

In its second remand redetermination, Commerce further corroborated the use of the 78.17 percent petition margin as the basis for the AFA rate assigned to Unicatch, relying on two separate, but both reasonable, methods that Commerce has employed in the past: the transaction-specific approach and the component approach. Second Remand Redetermination at 8. Commerce determined that, pursuant to both approaches, it could corroborate the 78.17 percent rate based on data from another mandatory respondent: Pro-Team Coil Nail Enterprise Inc. and PT Enterprise Inc (collectively, Pro-Team). *Id*. at 18. Commerce also further addressed Unicatch's arguments that the 78.17 percent AFA rate was unduly punitive and lacked consideration of the totality of the circumstances or seriousness of Unicatch's conduct, noting the importance of the AFA mechanism, and explaining how Unicatch's lack of cooperation impeded Commerce's administrative review. *Id*. at 10. Commerce reiterated that the AFA rate had been corroborated and not found aberrational, and that it was not required to determine what the rate would have been had Unicatch cooperated or that the selected rate reflects its alleged commercial reality. *Id*. at 10-11.

Although the Court had deferred consideration of the all-others rate, Commerce reexamined its calculation of the rate, as it had inadvertently failed to include the rate applied to mandatory respondent Bonuts Hardware Logistics Co., Ltd. (Bonuts) when calculating the all-others rate for the first remand redetermination. Second Remand Redetermination at 11. Accordingly, Commerce, using the same expected methodology of averaging the zero/*de minimis* margins and AFA margins that it employed for the first remand redetermination, recalculated the all-others rate to account for Bonuts's AFA rate. *Id*. Commerce explained that it used a simple average of the dumping margins for the individually-examined companies rather

3

than a weighted-average margin because it did not have the sales values from Bonuts to use a weighted-average margin. *Id*. at 25-26.

## ARGUMENT

### I.      Standard Of Review

"The same standard of review applies to the review of a remand determination as to the review of the original determination." *Bethlehem Steel Corp. v. United States*, 223 F. Supp. 2d 1372, 1375 (Ct. Int'l Trade 2002). Accordingly, the "court will sustain {Commerce's} determination upon remand if it complies with the court's remand order, is supported by substantial evidence on the record, and is otherwise in accordance with law." *Amanda Foods (Vietnam) Ltd. v. United States*, 774 F. Supp. 2d 1286, 1290 (Ct. Int'l Trade 2011).

### II.      Commerce More Than Adequately Corroborated The Petition Margin

Because the Court sustained Commerce's application of AFA to Unicatch, the only issue it need decide with regard to Unicatch is whether Commerce adequately explained its corroboration of the 78.17 percent rate from the petition.[1]  Second Remand Order at 9-12. Commerce more than did so, going beyond the actions required of it by corroborating (and explaining) the rate using not just one, but two, reasonable methods. Commerce first

---

[1] Although Unicatch does not expressly invite the Court to reconsider its ruling upholding the application of AFA to Unicatch, it nonetheless implicitly challenges the propriety of the AFA application. *See, e.g.*, Unicatch Second Remand Comments at 10 ("{Unicatch} provided Commerce with all of the underlying data necessary for Commerce to calculate United States price and Constructed Value."); 11 (blaming Commerce for the resort to AFA because Commerce did not "contact{} Unicatch directly by telephone to explain precisely what was required" or lay out the exact "consequences for not complying in a precise manner" or "provided Unicatch with a template"). This Court should ignore Unicatch's rehashing of these contentions, despite Unicatch's attempt to frame them as relevant to the consideration of the whether the 78.17 percent rate was appropriate.

corroborated the 78.17 percent petition margin by using certain of mandatory respondent Pro-Team's transaction-specific margins (the transaction-specific approach), and then conducted an additional corroboration analysis by comparing the normal value and net U.S. price underlying the highest petition dumping margin to the normal values and net U.S. prices calculated for Pro-Team (the component approach). These actions were certainly in compliance with the Court's second remand order, and plaintiff fails to demonstrate sufficient grounds to overturn the corroboration.

### A.    Relevant Legal Framework

Pursuant to 19 U.S.C. § 1677e(b), Commerce may use an inference adverse to an interested party when an interested party fails to cooperate to the best of its ability. When relying on an adverse inference, Commerce may rely upon information from the petition, the final determination from the investigation, a previous administrative review, or any other record information on the record. 19 U.S.C. § 1677e(b)(2). As the Court determined, information derived from the petition is considered secondary information pursuant to subsection 16773(c). Second Remand Order at 13-14. Subsection 1677e(c)(1) provides that, if Commerce relies on secondary information, it must, to the extent practicable, corroborate that information from independent sources that are reasonably at its disposal. 19 U.S.C. § 1677e(c)(1).

The Statement of Administrative Action Accompanying the Uruguay Round Agreements Act (SAA) provides that, in corroborating, Commerce should satisfy itself that the secondary information to be used has probative value. SAA, H.R. REP. No. 103-316, vol. 1, at 870 (1994), reprinted in 1994 U.S.C.C.A.N. 4040, 4199. Commerce will, to the extent practicable, evaluate the reliability and relevance of information to be used, but need not estimate what the dumping

margin would have been if the non-cooperating party had cooperated fully or demonstrate that the dumping margin reflects an alleged commercial reality of the party. 19 U.S.C. § 1677e(d)(3). Commerce may corroborate the highest petition margin using individual transaction-specific margins, or it may employ the component approach, or other sources that are reasonably at its disposal. *See, e.g., Deacero S.A.P.I. de C.V. v. United States*, No. 2020-1918, --- F.3d ---, 2021 WL 1705599, at 11-12 (Fed. Cir. Apr. 30, 2021) (upholding Commerce's corroboration, in which it relied on transaction-specific margin calculations); *Polyester Textured Yarn from India*, 84 Fed. Reg. 63,843 (Dep't of Commerce Nov. 19, 2019), and accompanying IDM at cmt. 7 (*Yarn from India*); *Prestressed Concrete Steel Wire Strand from Indonesia*, 86 Fed. Reg. 18.495 (Dep't of Commerce Apr. 9, 2021), and accompanying IDM at 10; *see Certain Walk-Behind Lawn Mowers and Parts Thereof from the People's Republic of China*, 86 Fed. Reg. 27,379 (Dep't of Commerce May 20, 2021), and accompanying IDM at cmt. 1 (each employing the component approach). Here, Commerce corroborated the highest petition margin both by using transaction-specific margins and by examining the individual components. Second Remand Results at 7-9.

> **B.    Unicatch Fails To Demonstrate That Commerce's Corroboration Should Not Be Sustained**

Despite Commerce's corroboration of the petition margin with *two* separate and reasonable methodologies, Unicatch still complains that its AFA-based rate is too high. But Commerce acted consistently with this Court's second remand order, relevant case law, and its own past practice in corroborating the margin and determining that it had probative value. This determination was supported by substantial evidence and in accordance with law, and Unicatch cannot demonstrate otherwise.

6

Commerce foremost employed its more frequently used transaction-specific approach, identifying transaction-specific margins from Pro-Team, a mandatory respondent from the same review period, that were ████████████ the petition rate. Second Remand Redetermination at 7-8. Because these transaction-specific rates were from one of the mandatory respondents in the same review period, and were ██████ the 78.17 petition rate, Commerce deemed them probative and, thus, adequately corroborative, in accordance with its own past practice and relevant case law. *Id.*; *see also* Second Remand Order at 17.

Unicatch, however, argues that the margin was not adequately corroborated because the number of transaction-specific margins ████████ the petition rate is ██████ and that those margins are ████████. *See* Unicatch Industrial Co., Ltd. and TC International, Inc. Comments on Redetermination, at 2-6 (Unicatch Second Remand Comments), ECF No. 107. The Court should reject these arguments.

Unicatch claims that there are ████ transaction-specific margins ██████ than the 78.71 percent petition margin, and that those two margins are outliers. *See* Unicatch Second Remand Comments at 2-3. However, Unicatch has not demonstrated that these transaction-specific margins are aberrational or that the number of margins relied upon is below a non-articulated threshold. Unicatch relies on this Court's decision in *Papierfabrik August Koehler AG v. United States*, 180 F. Supp. 3d 1211, 1230 (Ct. Int'l Trade 2016) (*Papierfabrik*), in which the Court held a single transaction-specific margin above the average margin to be insufficiently probative. Unicatch Second Remand Comments at 3-4. But, although the Court found the single margin not duly probative in that instance, it notably did *not* impose a minimum number of transactions upon which Commerce may rely in corroborating. Furthermore, neither the statute, relevant case

7

law, nor Commerce's practice imposes a requirement that the corroborating transactions represent a minimum number or certain percentage of total sales.[2] Second Remand Results at 17. Commerce's evaluation of whether certain transaction-specific margins are aberrational should not be so limited, as Unicatch claims, especially where, as here, there are ████████ ████ of transaction-specific margins as in *Papierfabrik*. *Id*.

Unicatch also claims that the transaction-specific margins are too high to be of probative value (*i.e.*, aberrational), and that the majority of Pro-Team's margins are much ████████ the petition rate. *See* Unicatch Second Remand Comments at 3-4. But Commerce evaluated this argument during the remand process and rejected it, determining that the record does not demonstrate that the ████ Pro-Team transactions were unique or conducted outside the ordinary course of business. Second Remand Redetermination at 17-18. Specifically, Commerce found that the number of margins and their percentage levels did not demonstrate aberrancy, and that plaintiff had not demonstrated that the margins were aberrational in terms of individual quantity or unusual terms of sale. *Id*. at 16. Moreover, the Court of Appeals for the Federal Circuit has held that the "mere fact that a margin is unusually high does not mean it lacks probative value and hence cannot be used for corroboration." *Papierfabrik August Koehler AG v. United States*, 843 F.3d 1373, 1381 (Fed. Cir. 2016) (*Papierfabrik II*). Indeed, "'{t}he statute simply does not require Commerce to select facts that reflect a certain amount of sales, yield a particular margin, fall within a continuum according to the application of particular statistical methods, or align

---

[2] Unicatch purports to cite certain cases in which this Court has upheld corroborations where a larger number of transaction-specific margins were above the rate being corroborated, Unicatch Second Remand Comments at 4, but none of these cases indicate that the number of margins examined here is insufficient, or that the margins are too high.

with standards articulated in other statues and regulations'") *Id.* (citing *Nan Ya Plastics Corp. v. United States*, 810 F.3d 1333, 1347 (Fed. Cir. 2016)).

Unitcatch has also failed to demonstrate that the transaction-specific margins used for corroboration are aberrational in terms of individual quantity. There simply exists no requirement that the corroborating transactions represent a minimum number or certain percentage of total sales. Unicatch argues that these ████ sales represent ████████ of Pro-Teams transactions, and ████████ of its sales value. Unicatch Second Remand Comments at 2-3. But, as the Federal Circuit held in *Papierfabrik II*, the fact that the unusually high sale margin used for corroboration represents only a miniscule amount of the total sales does not render it improper for Commerce to rely on the margin. *Id.* at 1382; *see also PSC VSMPO-AVISMA Corp. v. United States*, 498 Fed. Appx. 995 (Fed. Cir. 2013); *PAM, S.p.A. v. United States*, 582 F.3d 1336, 1340 (Fed. Cir. 2009)). Furthermore, the Pro-Team transaction-specific margins Commerce relied upon have quantities of ████████ kg and ████████ kg, similar to the quantities of other transaction-specific margins in Pro-Team's margin results, which run from ████ kg to ████████ kg. Second Remand Redetermination at 16-17. In sum, "the results are accurate, the results contain transaction-specific margins calculated ████████ the petition rate, and the occurrence of a transaction-specific margin ████████ the petition rate is ███ ████████████████████." *Id.* at 17.

Importantly, even assuming, for argument's sake, that Unicatch could demonstrate that Commerce did not adequately corroborate the petition rate using the transaction-specific approach, this would not render the corroboration unsustainable, given that Commerce *also* corroborated the 78.17 percent petition rate pursuant to the component method. *See* Second

Remand Results at 8-9, 18.  Using the component method, Commerce corroborated the petition's normal value and net U.S. prices against Pro-Team's normal value and net U.S. prices.  *See id.*; *see also* Administrative Review of Certain Steel Nails from Taiwan:  Draft Redetermination Calculations Memorandum – PT Enterprise Inc./Pro-Team Coil Nail Enterprise, Inc., dated February 19, 2020 (PT/Pro-Team Analysis Memorandum) (C.R.R. 1).  Pursuant to this additional method, not only were the normal values from the petition within the range of the normal value calculated for Pro-Team, but ███████ of calculated normal values were ███████ ███████ to the normal value from the petition.  Second Remand Results at 9, 18.  The same holds true for Pro-Team's calculated U.S. prices, with ███████ of calculated U.S. prices ███████ to the U.S. price from the petition.  *Id.*

Perhaps recognizing its difficulty in overcoming two different methods of corroboration by Commerce, Unicatch attempts to undermine Commerce's component approach altogether, contending that "the petition net U.S. sales prices and NVs fall{ing} within the norm of {Pro-Team}'s net prices and NVs does not corroborate whether the petition's dumping margin (the difference between the net U.S. price and NV) can be relied on as an AFA rate in this case." Unicatch Second Remand Comments at 6-7.  However, the Federal Circuit has held that, "so long as the data is corroborated, Commerce acts within its discretion when choosing which sources and facts it will rely on to support an adverse inference." *Ta Chen Stainless Steel Pipe, Inc. v. United States*, 298 F.3d 1330, 1339 (Fed. Cir. 2002).  Here, Commerce examined the record, and demonstrated that the petition's range of normal value and net U.S. prices was well within the same range as Pro-Team, an acceptable methodology consistent with Commerce's past practice.  *See, e.g., Yarn from India*.  "Commerce is not required to 'corroborate

10

corroborating data,' but merely satisfy itself that it has probative value." *Papierfabrik II*, 843 F.3d at 1382 (quoting *Nan Ya*, 810 F.3d at 1340). Accordingly, Commerce, to the extent practicable, corroborated the 78.17 percent petition rate by considering relevant record information in two different ways. Unicatch does not succeed in sufficiently undermining either corroboration method, much less both; thus, the Court should sustain Commerce's remand redetermination in this respect.

## III.   The 78.17 Percent Rate Is Not Punitive

Commerce's application of the 78.17 percent petition margin as the AFA rate is consistent with the statute, relevant precedent, and Commerce's own practice; moreover, it takes into account the totality of the circumstances and is not punitive. Here, the Court's inquiry should be simple, and limited. We have already demonstrated that Commerce has acted in accordance with its statutory obligations by properly corroborating the 78.17 percent margin using two different methods; accordingly, consistent with Federal Circuit precedent, the selected margin is not punitive. *See Paperfabrik II*, 843 F.3d 1382 ("as long as a rate is properly corroborated according to statute, Commerce has acted within its discretion *and the rate is not punitive*.") (emphasis added); *see also Deacero*, 2021 WL 1705599, at *12. There is simply no further analysis the Court must undertake, despite whatever protestations Unicatch may make.

But, even if the Court goes beyond the Federal Circuit directive that a corroborated rate is not punitive, Commerce nonetheless explained why the rate was not punitive and how it took into account Unicatch's circumstances.[3] Commerce has wide discretion when it comes to

---

[3] Commerce also provided explanation in its first remand redetermination, and we elaborated upon that explanation in our response to the parties' comments upon that first remand redetermination.

selecting an AFA rate for non-cooperating parties. *See F.Lii de Cecco di Filippo Fara S. Martino S.p.A. v. United States*, 216 F.3d 1027, 1033 (Fed. Cir. 2000) ("Commerce, not the courts, must make determinations as to proper anti-dumping margins."). And, while the AFA rate should not be unduly punitive, it should have "some built-in increase intended as a deterrent to non-compliance." *Essar Steel, Ltd. v. United States*, 753 F.3d 1368, 1373 (Fed. Cir. 2014). "Commerce is in the best position, based on its expert knowledge of the market and individual respondent, to select adverse facts that will create a proper deterrent to non-cooperation with its investigations and assure a reasonable margin." *De Cecco*, 216 F.3d at 1032.

Here, the Court has already held that Unicatch had failed to cooperate to the best of its ability by repeatedly failing to submit a complete cost reconciliation, despite multiple requests from Commerce and was, thus, subject to an AFA rate. And, as recognized by the courts, when respondents are allowed to make repeated errors or omissions in reporting information, they control the timeline and the order in which information is received, which enables them to manipulate the administrative process for their own benefit. *See, e.g., Viet I-Mei Frozen Foods Co. v. United States*, 839 F. 3d 1099 (Fed. Cir. 2016), *NSK Ltd. v. United States*, 481 F. 3d 1355 (Fed. Cir. 2007); *Nippon Steel Corp. v. United States*, 337 F. 3d 1373 (Fed. Cir. 2003); *Diamond Sawblades Mfrs.' Coal v. United States*, 415 F. Supp. 3d 1365 (Ct. Int'l Trade 2019).

In claiming that the AFA rate does not account for the totality of the circumstances, Unicatch looks to re-litigate the Court's decision to sustain Commerce's application of AFA, blaming Commerce for its own missteps and ignoring the inherent advantages to be gained by control of the administrative process. *See* Unicatch Second Remand Comments at 11. In doing so, Unicatch fails to mention Commerce's "… three detailed requests for a complete

reconciliation, {and that} Commerce reasonably expected more forthcoming responses from Unicatch." *See* Second Remand Redetermination at 10. In considering the totality of the circumstances, Commerce determined that Unicatch's lack of cooperation impeded Commerce's administrative review. *Id*. As Commerce explained, this delay and consistent failure of performance limits the time Commerce and other interested parties have to examine the information. *Id*. Additionally, such uncooperative behavior results in the respondents limiting the breadth and scope of questions that can be raised by other parties or by Commerce itself. *Id*. As Commerce stated in its remand redetermination, Unicatch's attempt to disregard its own behavior, as well as Pro-Team's higher transaction-specific margins, is not "an argument for the 'totality of the circumstances,' but rather a plea for any non-advantageous record evidence to be disregarded." *Id*. at 19. Commerce thus reasonably determined it would not be appropriate to adjust the AFA margin downward because Unicatch provided some, but not all, of the required information, as to "do so would be to allow a respondent to cooperate only on those matters which it chooses and to incentivize a respondent's preferable selection and omittance of any information it considers to be advantageous." *Id*.

Nor is the 78.17 percent AFA rate punitive. As this Court held, "Commerce was within its discretion to use an adverse inference in order to incentivize Unicatch to cooperate more fully in providing this information in future reviews." Second Remand Order at 12. Commerce reasonably acted to assign a rate to encourage future cooperation and serve as a deterrence to Unicatch; this action was not punitive. By way of example, in *Viet I-Mei*, the Federal Circuit held that the assigned country-wide rate, which was significantly higher than the calculated rate assigned to another respondent, was appropriate to use as AFA to ensure the successor-in-interest

13

did not benefit from refusing to cooperate with Commerce's requests for complete information. *Id.*, 839 F.3d at 1110. Commerce assigned the highest rate available to it that was also sufficiently adverse to encourage future cooperation. *See* Second Remand Results at 18-19. Commerce should not be forced to assign Unicatch a rate close to the lower calculated rates from a segment of the proceeding, as doing so would disincentivize cooperation by allowing it to benefit from another party's cooperation, despite the Court having found Unicatch did not cooperate fully. *See, e.g., Hubbell Power Sys. v. United States*, No. 15-00312, 2019 WL 6174713, at *3-4 (Ct. Int'l Trade Nov. 20, 2019) (sustaining application of a 206 percent AFA rate rather than plaintiff's suggestion of 55.16 percent or lower).

Unicatch suggests that the next-highest transaction-specific margin for Pro-Team, ███, ███, should be the starting point for its AFA rate, but claims that even this rate should be further adjusted downward. Unicatch Second Remand Comments at 14. But setting such a low AFA rate would disregard precedent, further reward Unicatch's uncooperativeness, and disincentivize future cooperation by it, or any other individually-examined respondent. Unicatch does not explain how receiving a rate at or below its suggestion would induce it, or anyone else, to better compliance, and ignores that an AFA rate should have a built-in increase from the rate it might have otherwise received. Unicatch's suggested rate is particularly ludicrous given that its *own calculated rate* from Commerce's preliminary results was 34.20 percent, ███, ███ than the rate it now suggests as a starting point for itself. *See* 82 Fed. Reg. 36,744; 36,745 (Dep't of Commerce Aug. 7, 2017). While we recognize that this margin was later

14

changed to an AFA rate, and is not necessarily accurate, there is simply no basis to conclude that somehow Unicatch would have received a lower rate if it had fully cooperated.[4]

The assigned AFA rate of 78.17 percent has been corroborated to the extent practicable from independent sources that are reasonably at Commerce's disposal, and by using two different, but reasonable, methods. Thus, according to Federal Circuit precedent, *that rate is not punitive*. And, in any event, Commerce further explained its examination of the totality of the circumstances and its reasoning for the rate being non-punitive in its remand redetermination. Accordingly, the Court should reject Unicatch's arguments and sustain the AFA rate.

**IV.  The Court Should Sustain Commerce's Application Of The All-Others Rate**

**A.  Relevant Legal Framework**

The statute provides that the all-others rate for non-individually examined respondents "shall be an amount equal to the weighted average of the estimated weighted average dumping margins established for exporters and producers individually investigated, excluding any zero and *de minimis* margins, and any margins determined entirely under section 1677e{.}" 19 U.S.C. § 1673d(c)(5)(A). However, if "the estimated weighted average dumping margins established for all exporters and producers individually {examined} are zero, *de minimis* or determined based entirely on facts otherwise available," Commerce "may use any reasonable method to establish the estimated weighted average dumping margin for all-other {producers and/or exporters}, including averaging the estimated weighted average dumping margins

---

[4] As explained above, Commerce is not required to determine what Unicatch's margin would have been had it fully cooperated, and the margin is not required to reflect Unicatch's commercial reality. 19 U.S.C. § 1677e(d). We include Unicatch's calculated margin from the preliminary results only to highlight the unreasonableness of Unicatch's suggested AFA rate.

determined for the exporters and producers individually investigated." 19 U.S.C.

§ 1673d(c)(5)(B). In the SAA, Congress stated that, when "the dumping margins for all of the

exporters and producers that are individually investigated are determined entirely on the basis of

the facts available or are zero or *de minimis* . . . (t)he expected method in such cases will be to

weight-average the zero and *de minimis* margins and margins determined pursuant to the facts

available." SAA, H.R. Rep. No. 103–316, vol. 1, at 873. Moreover, in *Albemarle Corp. &*

*Subsidiaries v. United States*, 821 F.3d 1345, 1351–54 (Fed. Cir. 2016), the Federal Circuit

explained that, when faced with only disfavored rates such as AFA or *de minimis* rates,

Commerce must use the expected method as directed by the SAA unless the expected method is

not feasible or reasonably reflective of the non-examined respondents' commercial reality or

actual dumping.

       **B.**    **Hor Liang And Romp Still Fail To Establish That The All-Others Rate Is
Not Reasonably Reflective**

Notwithstanding this Court's prior dismissal of Hor Liang's and Romp's claims

contesting the calculation of the non-selected rate,[5] Hor Liang and Romp contend that

---

[5] After this Court dismissed these counts in *Hor Liang Indus. Corp., et al. v. United States*, 337 F. Supp. 3d 1310, 1325 (Ct. Int'l Trade 2018), Hor Liang and Romp did not argue about the specific calculation of the all-others rate in its original brief, but instead raised arguments based on its remaining non-dismissed counts: that the non-selected respondent rate must reflect the changes in the mandatory respondents' rates, and that Commerce should not have denied their ministerial error allegation. *See* Hor Liang and Romp Motion for Judgment on the Agency Record (Jan. 19, 2019), ECF No. 34. Thus, the arguments Hor Liang and Romp now bring regarding the calculation of the 52.11 all-others rate are not properly within the scope of the remand, and the Court should not consider them. *See, e.g., Zhaoqing Tifo New Fibre Co. v. United States*, 256 F. Supp. 3d 1314, 1330 n.18 (Ct. Int'l Trade 2017) ("A court cannot expand its own jurisdiction, whether by a remand or by any other means"). Moreover, as explained below, Commerce's methodology has not changed from the final results. There is nothing Hor Liang and Romp can properly contest other than the propriety of the ministerial error denial, as Commerce did indeed alter the all-others rate to reflect the changes in the mandatory respondents' rates, thus mooting Hor Liang's and Romp's claim in that regard. In our response

16

Commerce blindly applied the expected method without considering whether the rate was reasonably reflective of potential dumping margins for non-investigated exporters or producers. *See* Hor Liang and Romp Second Remand Comments at 9-10, ECF No. 105. As previously explained in our response to the parties' comments upon Commerce's first remand redetermination, and further explicated in the second remand redetermination, Commerce's assessment of the all-others rate is consistent with the statute, legal precedent, and its own past practice. Hor Liang and Romp do not contest that averaging zero or *de minimis* rates with AFA rates is the expected method, and multiple cases have upheld the averaging of zero or *de minimis* rates with AFA rates in calculating an all-others rate. Nonetheless, Hor Liang's and Romp's primary complaint seems to be that using AFA rates in the calculation of the rate for non-examined respondents is not "reasonably reflective." However, as recognized in *Albemarle*, the rates of the examined respondents are assumed to be representative of the non-examined respondents, particularly when no evidence on the record disputes that assumption. 821 F.3d at 1355. This recognition does not caveat AFA-based rates as non-representative.

Here, Pro-Team, Unicatch, and Bonuts were selected as the three mandatory respondents for individual examination because they accounted for the substantial majority of entries during the period of review. *See* Second Remand Results at 23-24; Antidumping Duty Administrative Review of Nails from Taiwan: Selection of Additional Mandatory Respondent," (Feb. 9, 2017) (P.R. 76); *see also Albemarle*, 821 F.3d at 1353; *Qingdao Qihang Tyre Co. v. United States*, 308

---

to the parties' comments upon the first remand redetermination, we inadvertently overlooked that Hor Liang and Romp improperly raised these arguments, and simply addressed them on the merits. However, this does not excuse Hor Liang and Romp continuing to raise arguments already dismissed by the Court.

F. Supp. 3d 1329, 1363 (Ct. Int'l Trade 2018) ("Commerce … had a basis, grounded in substantial record evidence and according to a statutorily-authorized method, to conclude that the two largest exporters were representative of all exporters and producers for which review had been requested."). One mandatory respondent, Pro-Team, received a *de minimis* dumping margin, and the other two mandatory respondents, Unicatch and Bonuts, received rates based on AFA. *See* Second Remand Results at 23-24. Accordingly, because the weighted-average dumping margins established for all respondents individually examined in this case were zero, *de minimis*, or determined based entirely on AFA, Commerce appropriately and reasonably assigned the non-individually examined companies a margin based on the simple average of the zero percent margin and the margins determined pursuant to AFA.[6] *See* Second Remand Results at 24.

Additionally, and as stated in our response to the parties' comments upon the first remand redetermination, Commerce has determined that Hor Liang and Romp have not shown any record evidence that the rates for the individual mandatory respondents in this review, ranging from 0.00 to 78.17 percent, are not reasonably reflective of the dumping margins for the non-examined respondents. *See* Second Redetermination Results at 24; *see also* Response to Parties' Comments, ECF No. 87 at 15-16. Nor have Hor Liang and Romp given any supportable reason as to why Pro-Team's *de minimis* rate is more reflective of non-examined respondents' commercial realities than rates based on AFA, particularly where two of the three respondents received AFA rates.

---

[6] We discuss below why Commerce used a simple average rather than a weighted one.

18

The only purported pieces of "evidence" Hor Liang and Romp cite are the low rates calculated for two mandatory respondents in the underlying investigation and the rates calculated for mandatory respondents in the second administrative review. Hor Liang and Romp Second Remand Comments at 9-10. But Commerce properly focuses not on rates from previous or future segments (particularly future segments, since that information would not have been available to Commerce at the time of its original final results), but on rates assigned within the underlying review.[7] And, in the underlying review, the majority of mandatory respondents received AFA rates, a fact Hor Liang and Romp persistently ignore. Hor Liang and Romp seem to believe that, simply because a rate is based on AFA or is higher than other margins calculated in segments of the proceeding, that rate is *per se* not reasonably reflective. But this Court has rejected this argument before. *See YC Rubber Co. (North America) LLC v. United States*, 487 F. Supp. 3d 1367, 1380 (Ct. Int'l Trade 2020) (rejecting plaintiff's assertion that the rate serving as the basis for the all-others rate was aberrationally high and upholding Commerce's reasoning that, even though the rate was relatively higher than other margins calculated in segments of the proceeding, it was not inaccurate or inappropriate).

Hor Liang and Romp cite a string of cases purporting to show that including the AFA rate as part of the all-others rate is not reasonably reflective of non-examined respondents' margins. Hor Liang and Romp Second Remand Comments at 5-7. Most of these cases we previously distinguished or otherwise addressed in our response to the parties' comments upon the first remand redetermination. *See* ECF No. 87 at 16-18. Importantly, we pointed out that in

---

[7] And, to the extent a consideration of subsequent reviews is warranted, which it should not be, Commerce explained in its remand redetermination that there have been 78.17 percent rates assigned in subsequent reviews as well. Second Remand Redetermination at 25.

*Changzhou Wujin Fine Chem. Factory Co., Ltd. v. United States*, 701 F.3d 1367 (Fed. Cir. 2012), a case Hor Liang and Romp again rely upon, the Federal Circuit recognized Commerce's ability to use a simple average of AFA rates for individually investigated parties with *de minimis* or zero rates in a situation such as the one here. *Id.* at 1379.

Hor Liang and Romp also cite *Bosun Tools Co v. United States*, 463 F. Supp. 3d 1308 (Ct. Int'l Trade 2020), in an attempt to demonstrate that the all-others rate should be overturned. *See* Hor Liang Romp Second Remand Comments at 7-10. In *Bosun*, the Court remanded because Commerce had "failed to consider evidence indicating that the 41.025 rate is not reasonably reflective of the separate rate respondents' dumping …{and that} Commerce fails to address evidence which detracts from its determination to use the expected method." *Bosun*, 463 F. Supp. 3d at 1318-19. However, in the instant proceeding, Commerce reviewed all the rates assigned to mandatory respondents and analyzed the data from the investigation and the underlying review concerning the combined volume of exports. Second Remand Results at 23. Commerce found that the mandatory respondents represented a majority of all subject merchandise entries during the period of review and were therefore reasonably reflective of the non-examined companies. *Id.* at 23-24. Moreover, this Court, after remand in *Bosun*, plainly rejected the plaintiff's argument that imposition of an all-others rate based on total AFA is unfair. *Bosun Tools Co., Ltd. v. United States*, 493 F. Supp. 3d 1351, 1357-58 (Ct. Int'l Trade 2021) (*Bosun II*). And, indeed, as Hor Liang and Romp note, the Court upheld Commerce's calculation of a separate rate based on the average of an AFA and zero rate. *Id.* at 1358.

Commerce's decision to use the expected methodology and calculate the all-others rate by averaging the rates of the three mandatory respondents (which were all zero, *de minimis*, or

based on AFA) accords with the statute and relevant case law, and reasonably reflects the record evidence, as it accounts for the margins of all mandatory respondents during the relevant period of review. Hor Liang and Romp do not support their allegation that the rate is not reasonably reflective of non-examined respondents. Accordingly, the Court should uphold Commerce's methodology.

### C.    Commerce Appropriately Included Bonuts's AFA Rate In Its Calculation

Hor Liang and Romp argue that Commerce should not be allowed to use Bonuts's AFA-based margin in its calculation, despite Bonuts being a mandatory respondent in the underlying review. *See* Hor Liang and Romp Comments at 11. They contend that Commerce should exclude the AFA rate assigned to Bonuts in its calculation of the all-others rate because Bonuts is not a representative respondent and was not included in Commerce's prior calculations of the all-others rate. *See id*. at 12-14. But, despite plaintiffs' contentions, Bonuts's AFA-based rate *was* included in the all-others rate calculation for the original final results, and Commerce intended for Bonuts to be included in the first remand redetermination analysis as well. *See* Second Remand Comments at 27. When Commerce discovered that it inadvertently omitted the rate assigned to Bonuts for the first remand redetermination, it took action to correct that error in this remand redetermination by including Bonuts's rate in its calculation of the all-others rate. *See* Second Remand Results at 11-12, 27-29.

Bonuts was originally selected as one of the mandatory respondents because it was one of the largest exporter/producers of subject merchandise by volume. *See* 19 U.S.C. § 1677f-1(c)(2); *see also* Issues and Decision Memorandum (P.R. 191). Commerce determined that Bonuts had failed to cooperate to the best of its ability, and no party challenged its determination. IDM at 5.

21

Rather than complying with Commerce's request for information, Bonuts instead requested that it be "deselected." *See* Bonuts Letter (Dec. 27, 2016) (P.R. 55). Commerce did not deselect Bonuts as a mandatory respondent but instead determined that Bonuts had failed to cooperate to the best of its ability. *See* Second Remand Redetermination at 27. No party challenged Commerce's decision to continue to treat Bonuts as a mandatory respondent. Bonuts failed to cooperate in this proceeding and its resulting AFA rate is necessary to determine the non-examined companies' rate, as its rate is as reflective as that of the two other examined respondents. Moreover, there should be no serious question that Commerce has the authority to correct its inadvertent exclusion of Bonuts's rate from its prior calculation. 19 U.S.C. § 1675(h); *see also NTN Corp. United States*, 32 587 F. Supp. 2d 1313, 1315 (Ct. Int'l Trade 2008). Thus, this Court should not exclude Bonuts's rate from the all-others rate calculation.

### D.    Commerce Properly Used A Simple Average

Commerce reasonably relied on a simple average of the three respondents' rates, and adequately explained its reasoning for doing so. 19 U.S.C. § 1673d(c)(5)(B) provides that where all rates are zero, *de minimis*, or based entirely on facts available, Commerce may use "any reasonable method" for assigning the rate to non-selected companies. This Court has also upheld the use of a simple average. In *Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370 (Ct. Int'l Trade 2013), for example, the Federal Circuit held that the statute and the SAA "explicitly allow" for a simple average of an AFA rate and a *de minimis* rate. *Id.* at 1378.

Here, Commerce explained why it could not apply its normal methodology of weight-averaging the margins of the three respondents, stating that it did not have the sales values from Bonuts to do so and noting that, in those situations, it normally uses a simple average. This

reasoning has been upheld by the Court.  In *Solianus, Inc. v. United States*, 391 F. Supp. 3d 1331, (Ct. Int'l Trade 2019), a case where Commerce calculated the all-others rate using a simple average of the three individually investigated mandatory respondents, the Court determined that where the volume data on the record with respect to one of the respondents are unavailable or unusable, Commerce was permitted to use a simple average. *See id.* at 1338.

Hor Liang and Romp contend that Commerce should rely on sales quantities, not sales value, to calculate a weighted-average margin.  *See* Hor Liang and Romp Second Remand Comments at 12-14.  However, Commerce was unable to apply its normal methodology of calculating a weighted-average margin because the volume data belonging to mandatory respondent, Bonuts, was incomplete.  *See* Second Remand Redetermination at 25-26.  Commerce therefore used a simple average, a practice that has been upheld by this Court and used by Commerce in similar situations.  *See e.g., Multilayered Wood Flooring from the People's Republic of China*, 84 Fed. Reg. 38,002 (Dep't of Commerce Aug. 5, 2019); *Bestpak*, 716 F.3d at 738; *Solianus*, 391 F. Supp. 3d at 1338.

Because the volume data for Bonuts were incomplete, Commerce was precluded from calculating a weighted-average margin and instead reasonably used a simple average of the rates from the mandatory respondents.  There is no reason for the Court to disturb this course of action.

## CONCLUSION

For these reasons, we respectfully request that the Court sustain Commerce's second remand redetermination and enter judgment in favor of the United States.

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Patricia M. McCarthy
PATRICIA M. MCCARTHY
Assistant Director

OF COUNSEL:                                s/Sosun Bae
JARED CYNAMON                              SOSUN BAE
Attorney                                   Senior Trial Counsel
Department of Commerce                     U.S. Department of Justice
Office of the Chief Counsel                Civil Division
  for Trade Enforcement & Compliance      Commercial Litigation Branch
                                           P.O. Box 480
                                           Ben Franklin Station
                                           Washington, D.C. 20044
                                           Tel: (202) 305-7568


June 1, 2021                               Attorneys for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of June, 2021, I electronically filed a copy of the foregoing using the CM/ECF system, which sent a notification of such filing to counsel of record.

/s/Sosun Bae

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing brief complies with the word-count limitation, in that it contains 6,647 words according to the word-count function of the word-processing software used to prepare the memorandum, including text, footnotes, and headings.

<u>/s/Sosun Bae</u>