UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE MARK A. BARNETT, JUDGE

|  |  |
|---|---|
| PRO-TEAM COIL ENTERPRISE INC., et al.,<br><br>        Plaintiffs,<br><br>        v.<br><br>UNITED STATES,<br><br>        Defendant,<br><br>  - and -<br><br>MID CONTINENT STEEL & WIRE, INC.,<br><br>        Defendant-Intervenor. | Consol. Court No. 18-00027<br><br>**PUBLIC VERSION** |

CONSOLIDATED PLAINTIFFS',
HOR LIANG INDUSTRIAL CORP. AND ROMP COIL NAILS INDUSTRIES INC.,
<u>COMMENTS ON REDETERMINATION</u>

                             Max F. Schutzman
                             Ned H. Marshak
                             Andrew T. Schutz

                             GRUNFELD, DESIDERIO, LEBOWITZ,
                             SILVERMAN & KLESTADT LLP

                             599 Lexington Avenue FL 36
                             New York, NY 10022
                             (202) 557-4000

                                - and –

                             1201 New York Ave., NW, Suite 650
                             Washington, DC 20005
                             (212) 783-6881

                             *Counsel for Plaintiffs Hor Liang Industrial*
                             *Corp. and Romp Coil Nails Industries Inc.*

Dated: November 12, 2021

PUBLIC VERSION

# TABLE OF CONTENTS

I.  SUMMARY OF LAW ........................................................................................2

II. APPLICATION OF LAW TO THIS CASE ................................................................6

III. CONCLUSION ........................................................................................10

PUBLIC VERSION

# TABLE OF AUTHORITIES

**Cases**

*Baroque Timber Indus. (Zhongshan) Co. v. United States*, 971 F. Supp. 2d 1333 (CIT 2014) ..... 3

*Bosun Tools Co. v. United States*, 463 F. Supp. 3d 1309 (CIT 2020) ........................................ 4, 6

*Bosun Tools Co. v. United States*, 493 F. Supp. 3d 1351 (CIT 2021) ............................................ 5

*Changzhou Wujin Fine Chem. Factory Co., Ltd. v. United States*, 701 F.3d 1367 (Fed. Cir. 2012) ................................................................................................................................................ 2

*Gallant Ocean (Thailand) Co. v. United States*, 602 F.3d 1319 (Fed. Cir. 2010) .......................... 8

*GODACO Seafood Joint Stock Co. v. United States*, 494 F. Supp. 3d 1294 (CIT 2021) ............... 5

*GODACO Seafood Joint Stock Co. v. United States*, 2021 WL 4432694 (CIT, Sept. 27, 2021) ... 5

*Husteel Co. v. United States Steel Corp.,* 180 F. Supp. 3d 1330 (CIT 2016) ................................. 7

*Linyi Chengen Imp. & Exp. Co. v. United States*, 2020 WL 7488619 (CIT, Dec. 21, 2020) ..... 4, 6

*Linyi Chengen Imp. & Exp. Co. v. United States,* 2021 WL 4352321 (CIT, Sept. 24, 2021) ........ 4

*MacLean-Fogg Co. v. United States*, 100 F. Supp. 3d 1349 (CIT 2015) ..................................... 10

*Navneet Publications (India) Ltd. v. United States,* 999 F. Supp. 2d 1354 (CIT 2014) ............. 3, 6

*Navneet Publications (India) Ltd. v. United States,* 2015 WL 1963768 (CIT, May 4, 2015) .... 3, 4

*Qingdao Qihang Tyre Co. v. United States*, 308 F. Supp. 3d 1329 (CIT 2018) ............................. 7

*Shenzhen Xinboda Industrial Co. Ltd. v. United States*, 180 F. Supp. 3d 1305 (CIT 2016) .......... 3

*Solianus, Inc. v. United States*, 391 F. Supp. 3d 1331 (CIT 2019) ............................................ 5, 6

*Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370 (Fed. Cir. 2013) ........ 2, 10

**Statutes**

19 U.S.C. § 1677e ........................................................................................................................... 2

Section 735(c)(5)(B), Tariff Act of 1930 ....................................................................................... 2

**Other Authorities**

STATEMENT OF ADMINISTRATIVE ACTION accompanying the Uruguay Round Agreements Act, Pub. L. No. 103-465, 108 Stat. 4809 (1994), reprinted in 1994 U.S.C.C.A.N. 4040 ................. 2

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE MARK A. BARNETT, JUDGE

|  |  |
|---|---|
| PRO-TEAM COIL ENTERPRISE INC., et al., | : |
| Plaintiffs, | : |
| v. | : |
| UNITED STATES, | : |
| Defendant, | : Consol. Court No. 18-00027 |
| - and - | : **PUBLIC VERSION** |
| MID CONTINENT STEEL & WIRE, INC., | : |
| Defendant-Intervenor. | : |

**CONSOLIDATED PLAINTIFFS',
HOR LIANG INDUSTRIAL CORP. AND ROMP COIL NAILS INDUSTRIES INC.,
COMMENTS ON REDETERMINATION**

Consolidated Plaintiffs, Hor Liang Industrial Corp. ("Hor Liang") and Romp Coil Nails Industries Inc. ("Romp") (collectively "HL/Romp") submit these Comments on the Department of Commerce's ("Commerce"), October 13, 2021, Final Results of Redetermination Pursuant to Court Remand ("*Redetermination*"),[1] of Consolidated Court No. 18-00027, Slip Op. 21-93 (July 30, 2021). In Slip Op. 21-93, this Court noted that it "does not reach Hor Liang's contention that the 52.11 percent margin was not reasonably reflective of Hor Liang's potential dumping margin." *Id.* at 21, stating that "any arguments that Hor Liang wishes to preserve should be raised on remand." *Id.* at 21.

---

[1] R.P.D. 4. Citations to the *Redetermination* record are R.P.D. and R.C.D.

**I.      SUMMARY OF LAW**

Section 735(c)(5)(B), Tariff Act of 1930, as amended, authorizes Commerce to average a zero rate and a total AFA rate to calculate an-all others rate, **provided that such method is reasonable**. The Statement of Administrative Action discusses the reasonableness requirement as follows:

> In such situation, Commerce may use any reasonable method to calculate the all others rate. The expected method in such cases will be to weight average the zero and *de minimis* margins and margins determined pursuant to the facts available, provided that volume data is available. However, if this method is not feasible, or if it results in an average that would not be reasonably reflective of potential dumping margins for non-investigated exporters or producers, Commerce may use other reasonable methods.[2]

The court has addressed these language in various ways. In *Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370, 1373 (Fed. Cir. 2013) ("Bestpak"), the Federal Circuit reasoned that "assigning a non-mandatory, separate rate respondent a margin equal to over 120% of the only fully investigated respondent {whose calculated rate was zero} with no other information is unjustifiably high and may amount to being punitive, which is not permitted by the statute." [3]

In *Changzhou Wujin Fine Chem. Factory Co., Ltd. v. United States*, 701 F.3d 1367, 1378-79 (Fed. Cir. 2012), the Federal Circuit similarly reasoned that:

> The statute's use of the word "including" contemplates the possibility of other valid approaches, and the requirement that the method be "reasonable" imposes a duty on Commerce to select a method appropriate for the circumstances. Furthermore, AFA rates are disfavored by the statute: section 1673d(c)(5)(B) is an exception to the preferred method in section

---

[2] STATEMENT OF ADMINISTRATIVE ACTION accompanying the Uruguay Round Agreements Act, Pub. L. No. 103-465, 108 Stat. 4809 (1994), reprinted in 1994 U.S.C.C.A.N. 4040

[3] After *Bestpak* was decided, 19 U.S.C. § 1677e(b)(1)(B) and § 1677e(d) were modified to allow Commerce to ignore "commercial reality" in calculating AFA rates. The law was not modified to allow Commerce to ignore commercial reality and to apply punitive margins, untethered from reality, to "all others" respondents whose actions did not justify resort to AFA.

1673d(c)(5)(A), which instructs that AFA rates, like *de minimis* and zero rates, should be excluded.

In *Baroque Timber Indus. (Zhongshan) Co. v. United States*, 971 F. Supp. 2d 1333, 1345 (CIT 2014), the court rejected Commerce's determination for failing 'to make a connection between the selected rate and respondents' economic reality and factual situation." *See also Shenzhen Xinboda Industrial Co. Ltd. v. United States*, 180 F. Supp. 3d 1305, 1321 (CIT 2016), ("And although Commerce may assign adverse inferences where 'an interested party has failed to cooperate by not acting to the best of its ability to comply with a request for information,' 19 U.S.C. § 1677e(b)(1), neither Xinboda nor any other separate rate respondent failed to cooperate in the review.").

In *Navneet Publications (India) Ltd. v. United States,* 999 F. Supp. 2d 1354, 1362–66 (CIT 2014), the court reasoned:

> the court must determine whether Commerce "articulate{d} a satisfactory explanation for its action" that is not based on "mere conjecture or supposition." . . . In undertaking this assessment, "'form should be disregarded for substance and the emphasis should be on economic reality.' ". . . This is because Commerce's overriding purpose in administering antidumping law is to accurately calculate dumping margins.

The court then noted that "{w}hen placed in context, the 11.01% figure appears aberrational because it is significantly higher than all prior margins calculated for cooperative respondents, and it represents a nearly four-fold increase from the preceding review during a time when mandatory respondent margins dropped to zero." *Id*. at 1365.

On remand, Commerce "assigned an all-others rate of 0.5%, the lowest rate above *de minimi*s." 2015 WL 1963768, at *2 (CIT, May 4, 2015). In affirming this decision, the court expressly rejected petitioner's claim that "the 0.5% all-others rate cannot reflect economic reality because the uncooperative companies were assigned AFA rates of 22.02%, a far cry from 0.5%," reasoning that petitioner's argument "conflates the economic reality of the uncooperative

3

companies with that of plaintiffs (who were neither uncooperative nor selected for individual investigation)." *Id*. at *4.

In *Linyi Chengen Imp. & Exp. Co. v. United States*, 2020 WL 7488619, at *5–6 (CIT, Dec. 21, 2020), the court rejected Commerce's decision to calculate separate rate margins based on the average of a zero rate and a 114.72% AFA rate, explaining:

> Commerce cited no credible economic evidence on the record showing that the Separate Rate Plaintiffs' dumping margins are different than Linyi Chengen's 0% rate or connecting the Separate Rate Plaintiffs' dumping margins with the rate of 57.36% that was derived from the average of Linyi Chengen's 0% rate and Bayley's AFA rate of 114.72%.

On remand, Commerce reaffirmed its original decision, which the court again rejected for lack of substantial evidence:

> Because Commerce cited as record evidence only one commercial invoice showing an approximately 20% price difference . . . {between plaintiff's sales price and the price quotes used to determine the estimated dumping margins in the Petition} . . . the Court concludes that Commerce's 57.36% separate rate assigned to the voluntary, cooperating Separate Rate Plaintiffs is not reasonable and is unsupported by substantial evidence.

2021 WL 4352321, at *6 (CIT, Sept. 24, 2021).

In *Bosun Tools Co. v. United States*, 463 F. Supp. 3d 1309, 1318–19 (CIT 2020), the court rejected Commerce's reliance on the "expected method" because Commerce failed to consider evidence indicating that the 41.025% rate was not reasonably reflective of the separate rate respondents' dumping margin. On remand, Commerce continued to rely on a 41.025% rate, basing its explanation on record evidence that "the rates from the prior reviews have increased from review to review, and the separate rate from the most contemporaneous prior review

4

{39.66%} is similar to the separate rate determined here."[4] In light of these unique facts, the Court affirmed. 493 F. Supp. 3d 1351, 1358 (CIT 2021).

Finally, in *GODACO Seafood Joint Stock Co. v. United States*, 494 F. Supp. 3d 1294, 1306 (CIT 2021), the court reasoned:

> The rate selected must serve the purpose of calculating dumping margins as accurately as possible. {T}he court observes that evidence on the record suggests instead that Separate Rate Plaintiffs' rate may be reasonably closer to the $0.69 per kilogram rate assigned to separate rate respondents in the prior twelfth administrative review, rather than the total AFA rate of $3.87 per kilogram from the thirteenth administrative review.

On remand, "Commerce revised the all-others separate rate by applying a simple average of the separate rates assigned in the four prior administrative reviews of the antidumping duty order and assigned that average rate to the Separate Rate Plaintiffs." 2021 WL 4432694, at *2 (CIT, Sept. 27, 2021). The court affirmed, noting that "the margins assigned to the mandatory respondents from the previous four administrative reviews accounted for the largest volume of entries to the United States, . . . the separate rates ranged from $0.69/kg to $1.20/kg., . . . {and} . . . the simple average of the prior four separate rates accounted for any variations between the periods of review." *Id*. at *3.

In sum, Commerce can only rely on the "expected method" of averaging zero rates and AFA rates in calculating the dumping margin for non-investigated companies, not individually examined, when the expected method results in a rate which has a reasonable relationship to the economic reality of those companies. Commerce's decision must conform to judicial precedent, discussed above.[5] Thus, this Court should reject Commerce's reliance on unreasonable rates;

---

[4] Case 1:18-cv-00102-CRK, Document 94, at 20.

[5] In *Solianus, Inc. v. United States*, 391 F. Supp. 3d 1331, 1340 (CIT 2019), the court upheld Commerce's decision to impose "an all-others rate derived from a simple average of the dumping margins from the three mandatory respondents," one of which was zero and the other

5

that is, rates that: (1) are "significantly higher than all prior margins calculated for cooperative respondents" (*Navneet*); (2) "represent{} a nearly four-fold increase from the preceding review during a time when mandatory respondent margins dropped to zero" (*Navneet*); (3) "conflate{} the economic reality of the uncooperative companies with that of plaintiffs (who were neither uncooperative nor selected for individual investigation)" (*Navneet*); (4) do not rely on "credible economic evidence on the record showing that the Separate Rate Plaintiffs' dumping margins are different than . . .{PT's}. . . 0% rate or connecting the Separate Rate Plaintiffs' dumping margins with the rate of . . . {35.3}% . . . that was derived from the average of . . . {PT's} . . . 0% rate and . . . {Bonuts and Unicatch's} . . . AFA rate of . . . .78.17%}" (*Linyi Chengen);* and (5) are not similar to "the separate rate from the most contemporaneous prior review" (*Bosun*).

## II.     APPLICATION OF LAW TO THIS CASE

Based on these legal principles, this Court should reverse Commerce's decision. First, the 35.30% rate does not reasonably reflect HL/Romp's dumping margin. Commerce calculated a zero rate for PT/Proteam based on prices and costs in AR1; in contrast, the 78.17% rate applied to Unicatch and Bonuts was based on pre-investigation data from 2013 placed on the record by Petitioner with the intent to maximize potential margins.[6]

Second, the 35.30% rate is aberrational compared to margins calculated for cooperative respondents in the Taiwan Nails Order in three periods: before, during, and immediately after

---

two which were based on total AFA. The court noted that plaintiffs "have failed to advance either a legal or factual reason why the Department's methodology is flawed as applied to this administrative review," and "have failed to allege that this sanctioned methodology was improperly applied in this administrative proceeding." *Id.*  In contrast, HL/Romp are challenging Commerce's application of the preferred methodology in light of the record evidence in AR1.

[6] Citations to record evidence are found in HL/Romp's *Comments in Response to Draft Results of Redetermination Pursuant to Court* Remand (Sept. 22, 2021) (R.C.R. 2) and Consolidated Plaintiffs Comments on Redetermination (April 8, 2021), Docket No. 105.

AR1. In the initial investigation (before) Commerce calculated rates of zero and 2.16%; in AR1 (during) the calculated rate was zero; in AR2 (immediately after) the calculated rates were zero (PT) and 6.16% (Unicatch).

 Commerce argues that it "generally does not determine the reasonableness of a rate based upon comparison with rates from previous segments." *Redetermination* at 18. This rationale ignores judicial precedent, as discussed above, in which the court has directed Commerce's attention to rates calculated in previous segments. Commerce then turns around and reasons that "respondent interested parties have not presented any evidence that the rates for the individual mandatory respondents in this review are not reasonably reflective of the potential dumping margins for the non-examined respondents, Hor Liang and Romp Coil." *Id.* This rationale ignores record evidence comparing rates calculated by Commerce for the mandatory respondents (which, by definition, are representative of all companies subject to review)[7] before/during/after AR1 with the 78.17% AFA rate (which was used to calculate the 35.30% rate).

 Third, Commerce claims that "there is no evidence that the 35.30 percent rate determined for Hor Liang and Romp Coil in this review is not reasonably reflective of their potential dumping margins; neither is there evidence that demonstrates that this rate is clearly punitive." *Id*. at 19. Commerce is wrong. In AR1, Commerce calculated the ADD rate for one company: zero. Before, during and immediately after AR1, Commerce calculated rates ranged from zero to

---

[7] *See Qingdao Qihang Tyre Co. v. United States*, 308 F. Supp. 3d 1329, 1363 (CIT 2018) ("Commerce therefore had a basis, grounded in substantial record evidence and according to a statutorily-authorized method, to conclude that the two largest exporters were representative of all exporters and producers for which review had been requested."); *Husteel Co. v. United States Steel Corp.,* 180 F. Supp. 3d 1330, 1339 (CIT 2016) ("Commerce reasoned that when it chooses the largest producers, there is an inherent representative aspect to the choice as those producers likely make up a significant portion of the market.").

6.16% (rates were zero, zero, zero, 2.16%, 6.16%). From the investigation through AR4, Commerce calculated rates of zero, zero, zero, 2.16%, 6.16%, 6.72% and 27.69%. All of these rates were below 35.30%, and only one rate, in AR4 (far removed from AR1) was close to 35.30%. The next closest rate (6.72%) was five times lower than 35.0%. In *Gallant Ocean (Thailand) Co. v. United States*, 602 F.3d 1319, 1324 (Fed. Cir. 2010), the Federal Circuit held that "a rate over five times the highest rate imposed on similar products" could not be used as an AFA rate because it was "far beyond an amount sufficient to deter Gallant and other uncooperative respondents from future non-compliance." Thus, a rate which is five times higher than "the highest rate imposed on similar products" undeniably cannot be applied to fully co-operating respondents, for whom deterrence is not required.

Fourth, Commerce claims "there is evidence that demonstrates that dumping is occurring above the 35.30 percent rate," as set forth in the "*Third Remand Order* at 10-13 (explaining and affirming Commerce's finding that transaction-specific margins from PT/Pro-Team's data corroborated the 78.17 AFA rate*).*" *Redetermination* at 17. The referenced evidence consists of a review of the sales specific margins which Commerce calculated for PT in AR1. In the Third Remand Order, Slip Op. 21-03, this Court held that these individual rates corroborated the 78.17% AFA rate. That decision, however, does not mean that it was reasonable for Commerce to apply a 35.30% rate to fully co-operating respondents.[8] In this case, this Court is asked to determine whether the 35.30% rate is aberrational compared to weighted average, mandatory respondent, calculated rates of zero, zero, zero, 2.16%, and 6.16%, and not whether one

---

[8] HL/Romp respectfully submit that this Court's corroborating analysis on pages 10-13 of the Third Remand Order was wrongly decided. This Court, however, need not revisit that decision at this time; it merely needs to agree with HL/Romp that selecting a reasonable rate to apply to a fully co-operating respondent requires a different analysis than corroborating an AFA rate.

mandatory respondent made one sale in one Annual Review at a rate of 35.30% or greater. Moreover, in AR1, Commerce calculated margins for [     ] PT/Pro-Team sales. Rates for [     ] sales ([     ] of all sales) were greater than [     ], rates for [   ] sales ([     ] were between [     ], rates for [   ] sales ([     ]) were between [     ] percent, and rates for the remaining [     ] sales ([     ]) were below [   ] percent.[9] Thus, margins on merely [     ] of PT's sales ([     ]) were greater than 35.3%, and merely [               ] were greater than 10%. These sales specific rates, therefore, do not constitute evidence that the 35.30% rate is reasonable.

Fifth, Commerce rejected HL/Romp's argument that it should exclude Bonuts data. *Redetermination* at 20-21. In reaching its conclusion, Commerce improperly rejected record evidence that Bonuts was not a representative respondent. As Bonuts advised the Department during the review, in a letter dated December 28, 2016 (P.D. 55):

> In fact, we only exported 108,025.48 kg of nails to the United States During POD. As we advised the Department, Bonuts is a Taiwan trading company, which also repacks comparatively small quantities of nails. Bonuts does not produce nails in Taiwan and Bonuts' business model is not representative of the business models of Taiwan nails producers which export nails to the United States in substantial quantities.

*See also PT's Comments CBP Data* at 3-6 (Oct. 6, 2016) (C.D. 4) including facts that: (1) Bonuts entries were not [                              ]; and (2) Bonuts entries consisted of [          ]. In the absence of any evidence rebutting the factual information submitted regarding Bonuts sales, Commerce should have not relied on Bonuts AFA rate to calculate HL/Romp margins

---

[9] GDLSK Comments on Draft Remand (Jan. 28, 2021), Confidential Joint Appendix Doc No. 11 (Docket No. 117).

Finally, Commerce rejected HL/Romp's request that Commerce reopen the record to obtain data necessary to calculate a reasonable rate for HL/Romp, reasoning that "we find that no additional information is required for Commerce to determine the rate for the non-individually examined respondents." *Redetermination* at 19. Reopening the record would conform to law. *See Bestpak*, 716 F.3d at 1373 ("{I}f the record before the agency does not support the agency action ... the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'"). Thus, in the event that this Court decides that it should not order Commerce to calculate a reasonable rate based on data in the existing record, the Court should order Commerce to reopen the record to obtain additional data. *See MacLean-Fogg Co. v. United States*, 100 F. Supp. 3d 1349, 1363 (CIT 2015) ("Accordingly, . . . the particular circumstances presented here require that, where the necessary data is missing from the record due to Commerce's own failure to fully administer the legal framework, it is the agency's responsibility to go back and fix errors that are material to the remand proceeding.").

### III. CONCLUSION

In sum, this Court should order Commerce to recalculate HL/Romp's margin in a reasonable manner as required by law, Commerce practice and judicial precedent.

    Respectfully submitted,

    /s/ *Ned H. Marshak*
    Ned H. Marshak
    Max F. Schutzman
    Andrew T. Schutz

    GRUNFELD, DESIDERIO, LEBOWITZ
    SILVERMAN & KLESTADT LLP

    599 Lexington Avenue-36th Floor
    New York, NY  10022
    (212) 557-4400

**PUBLIC VERSION**

                - and –

            1201 New York Ave., NW, Suite 650
            Washington, DC 20005
            (212) 783-6881

Dated:  November 12, 2021

# CERTIFICATE OF COMPLIANCE

Pursuant to Chamber Procedure 2(B)(1), the undersigned certifies that this brief complies with the word limitation requirement. The word count for Plaintiffs' Remand Comments, as computed by Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt's word processing system Microsoft Word 2007, is 2,994 words, less than the 3,000 word limit.

/s/ Andrew T. Schutz
*Counsel for Plaintiffs*

Dated: November 12, 2021

11359037_1