UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

|  |  |
|---|---|
| PRO-TEAM COIL NAIL ENTERPRISE INC. ET AL., | ) ) ) |
| Consolidated Plaintiffs, | ) ) |
| v. | ) ) |
| UNITED STATES, | ) ) Consol. Court No. 18-00027 |
| Defendant, | ) ) |
| and | ) ) |
| MID CONTINENT STEEL & WIRE, INC., | ) ) |
| Defendant-Intervenor. | ) ) ) |

**DEFENDANT-INTERVENOR MID CONTINENT STEEL & WIRE, INC.'S
COMMENTS IN SUPPORT OF FINAL REMAND RESULTS**

Adam H. Gordon
Ping Gong
**THE BRISTOL GROUP PLLC**
1707 L Street NW
Suite 570
Washington, DC 20036
(202) 991-2700
*Counsel to Mid Continent Steel & Wire, Inc.,*

Dated: January 12, 2022

**I.  INTRODUCTION**

On behalf of Defendant-Intervenor Mid Continent Steel & Wire, Inc. ("Mid Continent"), we hereby submit these comments in support of the *Final Remand Results* issued by the Department of Commerce ("Commerce"). Results of Redetermination Pursuant to Court Remand, Certain Steel Nails from Taiwan, *Pro-Team Coil Nail Enterprise, Inc., et al. v. United States*, Consol. Court No. 18-00027, Slip Op. 21-93 (CIT July 20, 2021) (Oct. 13, 2021) (CM/ECF Doc. No. 127) ("Final Remand Results"), and in response to comments in opposition to Final Remand Results filed by Consolidated Plaintiffs Hor Liang Industrial Corp. and Romp Coil Nails Industries Inc. (collectively, "Hor Liang"). *See* Hor Liang's Comments on Redetermination (Nov. 12, 2021) (CM/ECF Doc. No. 129) ("Hor Liang Comments"). These comments are timely submitted pursuant to the Court's December 1, 2021 Order (CM/ECF Doc. No. 132).

**II.  DISCUSSION**

Mid Continent supports Commerce's calculation of an all-others rate of 35.30% assigned to the non-individually examined respondents based on a weighted average of the dumping margins received by individually examined respondents (PT's margin of 0%, and Unicatch's and Bonuts's AFA margins of 78.17%). *See* Final Remand Results at 7-8.

Hor Liang argues that the all-others rate of 35.30% calculated using the expected method under the SAA does not reasonably reflect potential dumping margins for the all-others rate respondents. *See* Hor Liang Comments at 2-10.

Hor Liang's argument is without merit. The statute, the Statement of Administrative Action ("SAA"), and judicial precedent all support calculating the all-others rate using the expected method here, *i.e.*, a weighted average of the two AFA rates and the zero percent margin

1

received by the three mandatory respondents in this review. In general, Commerce calculates the all-others rate as the weighted average of dumping margins calculated for individually examined respondents, excluding any zero, *de minimis*, and total facts available margins. 19 U.S.C. § 1673d (c)(5)(A). However, the statute provides an exception. Where, as here, all dumping margins calculated for individually examined respondents are zero, *de minimis*, or total facts available margins, Commerce "may use any reasonable method" to determine the all-others rate, "including averaging" the zero, *de minimis*, or total facts available margins calculated for individually examined respondents. 19 U.S.C. § 1673d (c)(5)(B).[1]

The SAA, recognized by Congress as an authoritative expression concerning the interpretation and application of the Tariff Act under 19 U.S.C. § 3512(d), explains that in situations where the statutory exception applies,

> The **expected method** in such cases will be to weight-average the zero and *de minimis* margins and margins determined pursuant to the facts available, provided that volume data is available. However, if this method is not feasible, or if it results in an average that would not be reasonably reflective of potential dumping margins for non-investigated exporters or producers, Commerce may use other reasonable methods.

The Statement of Administrative Action accompanying the Uruguay Round Agreements Act, H.R. Doc. No. 103–316, Vol. 1 at 873 (1994), *reprinted in* 1994 U.S.C.C.A.N. 4040, 4201 (the "SAA") (emphasis added).

This expected method has also been affirmed by the CAFC in *Albemarle Corp. & Subsidiaries v. United States*, 821 F.3d 1345 (Fed. Cir. 2016), *Changzhou Hawd Flooring Co., Ltd. v. United States*, 848 F.3d 1006 (Fed. Cir. 2017), and *Bosun Tools Co., Ltd. v. United States*,

---

[1] The statute does not address the establishment of the all-others rate in an administrative review pursuant to 19 U.S.C. § 1675(a). While 19 U.S.C. § 1673d(c)(5) applies only to original investigations by its express language, Commerce generally looks to this section for calculating the all-others rate in an administrative review. *See* Final Remand Results at 5.

2

___ F.4th ___ (Fed. Cir. Ct. No. 21-1929, Jan. 10, 2022). In *Albemarle*, the CAFC held that Commerce erred in using data from a previous review to determine the separate rate instead of basing the separate rate on an average of the *de minimis* rates calculated for mandatory respondents under the expected method:

> The SAA thus makes clear that under the statute, when all individually examined respondents are assigned *de minimis* margins, Commerce is expected to calculate the separate rate by taking the average of those margins. Commerce may use "other reasonable methods," but only if Commerce reasonably concludes that the expected method is "not feasible" or "would not be reasonably reflective of potential dumping margins."
>
>    \*   \*   \*
>
> The very fact that the statute contemplates using data from the largest volume exporters suggests an assumption that those data can be viewed as representative of all exporters. The statute assumes that, absent such evidence, reviewing only a limited number of exporters will enable Commerce to reasonably approximate the margins of all known exporters. As the CIT has explained, "{t}he representativeness of the investigated exporters is the essential characteristic that justifies an 'all others' rate based on a weighted average for such respondents." *Nat'l Knitwear & Sportswear Ass'n v. United States*, 779 F. Supp. 1364, 1373–74, 15 C.I.T. 548, 559 (1991).

*Albemarle*, 821 F.3d at 1352-1353.

Similarly, in *Changzhou Hawd*, the CAFC held that Commerce "could not deviate from the expected method unless it found, based on substantial evidence, that the separate-rate firms' dumping is different from that of the mandatory respondents," which it had not done in that case, and the agency erred when it assigned a separate rate that, though not specified numerically, was declared to be more than *de minimis*, even though it found zero or *de minimis* margins for all three mandatory respondents. *Changzhou Hawd*, 848 F.3d at 1011-1012.

Although both *Albemarle* and *Changzhou Hawd* deal with situations where all mandatory respondents received *de minimis* rates, the underlying rationale should apply with equal force

3

where two of the three mandatory respondents receive total AFA rates. As Commerce explained in its Final Remand Results, "{t}he rates assigned to the mandatory respondents are representative and reasonable unless substantial evidence shows otherwise, whether we had calculated a zero rate, a *de minimis* rate, or assigned to them a rate based entirely on facts available." Final Remand Results at 16 (citing *Albemarle*). Indeed, this is what the CAFC affirmed in *Bosun*: "although *Albemarle* concerned a case with *de minimis* rates rather than AFA rates, its reasoning is equally applicable here; the same statutory language in § 1673d(c)(5)(B) that permits use of *de minimis* rates also permits use of AFA rates." *Bosun* at *9-10.

Therefore, the statute at 19 U.S.C. § 1673d (c)(5)(B), the SAA, and judicial precedent all support Commerce's calculation of the all-others rate based on a weighted average of the two AFA margins assigned to Bonuts and Unicatch, and the zero margin calculated for PT.

Hor Liang cites to a number of cases to support its claim that using the expected method to calculate the all-others rate results in a rate that is not reasonably reflective of potential dumping margins of the all-others rate companies. *See* Hor Liang Comments at 2-5. However, these cases are all factually distinguishable from the instant case.

For example, in *Changzhou Wujin Fine Chemical Factory Co., Ltd. v. United States*, 701 F.3d 1367 (Fed. Cir. 2012), the CAFC held that Commerce acted arbitrarily in calculating a separate rate based on an average of the *de minimis* rate calculated for one mandatory respondent and a **hypothetical** AFA rate based on U.S. price data from a non-cooperating respondent. The court pointed out that:

> Indeed, the only AFA rates contemplated under section 1673d(c)(5)(B)'s simple average methodology are those determined for "individually investigated" parties. Such rates are generally based on verified data, *see* 19 U.S.C. § 1677m(i)(1), and bear a reasonable relationship to the party's actual business practices. *See Gallant Ocean*, 602 F.3d at 1323 (even "{a}n AFA rate must be a reasonably accurate estimate of the

4

> respondent's actual rate, albeit with some built-in increase intended as a deterrent" (internal quotation marks omitted)).  Substitution of a hypothetical "AFA rate" inapplicable to any individually investigated party is neither suggested nor compelled by the statute, particularly where the sole impact of that substitution will be on cooperating parties.

*Changzhou Wujin*, 701 F.3d at 1379.  Here, Commerce used total AFA rates determined for individually examined respondents Bonuts and Unicatch, not some hypothetical AFA rate. Therefore, *Changzhou Wujin* is distinguishable.

In *Baroque Timber Indus. (Zhongshan) Co., Ltd. v. United States*, 971 F. Supp. 2d 1333 (CIT 2014), Commerce calculated zero margins for all three mandatory respondents, but used a simple average of **an AFA rate for the PRC-wide entity** in addition to the three mandatory rates of zero to calculate the separate rate.  *See id.* at 1338-1339.  The CIT held that although it is not *per se* unreasonable for Commerce to use this method to calculate the separate rate, it was unreasonable as applied because Commerce deviated from the expected method to calculate the separate rate and failed to support this deviation with substantial evidence showing any connection between the PRC-wide entity rate and separate rate companies' potential dumping margins.  *See id.* at 1341, 1343-1345.  Here, in contrast, Commerce used the expected method and did not include any AFA rate for a country-wide entity (which would not apply in a case involving a market economy like Taiwan) in its calculation of the all-others rate.

In *Navneet Publications (India) Ltd. v. United States*, 999 F.Supp.2d 1354 (CIT 2014), Commerce calculated the all-others rate based on a simple average of zero margins calculated for two mandatory respondents and total AFA margins assigned to two uncooperative respondents that failed to respond to Commerce's Q&V questionnaires (who were not selected as mandatory respondents).  *Navneet*, 999 F.Supp.2d at 1357.  In other words, Commerce did not use the expected method, unlike the instant proceeding, rendering this case inapposite.  In contrast, all of

the margins at issue in the instant appeal were calculated for or assigned to mandatory respondents.

In *GODACO Seafood Joint Stock Co.*, Commerce calculated the separate rate based on a simple average of the separate rates assigned in the four previous reviews (departing from the expected method), and the court affirmed. *GODACO Seafood Joint Stock Co. v. United States*, ___ F. Supp. 3d ____, 2021 WL 4432694 at *2-4 (CIT Sep. 27, 2021). That case is currently on appeal before the Federal Circuit (CAFC Ct. No. 22-1202). Unlike *GODACO*, Commerce used the expected method to calculate the all-others rate here. In addition, because *GODACO* is currently pending before the Federal Circuit, it is not final and of limited precedential value.

Instead, this case is more similar to *Solianus, Inc. v. United States*, 391 F. Supp. 3d 1331 (CIT 2019) and *Mid Continent Steel & Wire, Inc. v. United States*, 321 F. Supp. 3d 1313 (CIT 2018). In *Solianus*, the CIT affirmed Commerce's calculation of the all-others rate based on a simple average of the *de minimis* dumping margin calculated for one mandatory respondent and two total AFA margins assigned to two other mandatory respondents, and rejected plaintiffs' contention that the all-others rate did not reflect economic reality:

> Plaintiffs have failed to allege any specific error in the Department's application of the methodology to the facts of this case. That is, Plaintiffs have offered no reason why the resulting 30.15 percent all-others rate failed to "reflect{ } economic reality" of the "all-other" firms. The court need not (and will not) take Plaintiffs at their word that "{o}n its face, this rate does not bear a connection to the actual production experience and sales costs of an actual cooperating Korean producer or exporter." Indeed, the Department has justified the application of the sanctioned methodology to calculating the all-others rate. First, the Department selected Down Nara and Huvis as mandatory respondents in the investigation based on the assumption that, as the largest volume exporters, they were "representative of the rest of the market." Additionally, the 45.23 percent AFA rate was corroborated by "compar{ing} the 45.23 percent margin to the transaction-specific dumping margins that {the Department} calculated for TCK." And, in its analysis, Commerce "found that the dumping margin of 45.23 percent

6

>{was} not significantly higher than the highest transaction-specific margin calculated for TCK, and therefore {was} relevant and {had} probative value." Plaintiffs do not dispute these findings. Nor do Plaintiffs dispute the claim that "no information on the record { } supports Solianus' claim that it is like TCK but unlike Down Nara and Huvis." Without more evidence to support the claim that the resulting rate is not fairly representative of "all other" exporters, the court sustains the Department's application of the simple average methodology to calculate the all-others rate.

*Solianus*, 391 F.Supp.3d at 1339 (citations omitted).

Similar to the plaintiffs in *Solianus*, Hor Liang has "failed to allege any specific error in the Department's application of the methodology to the facts of this case. That is, {it has} offered no reason why the resulting {35.30} percent all-others rate failed to 'reflect{ } economic reality' of the 'all-other' firms. The court need not (and will not) take Plaintiffs at their word that '{o}n its face, this rate does not bear a connection to the actual production experience and sales costs of an actual cooperating . . . producer or exporter.'" *Id.* at 1339.

The closest that Hor Liang comes to presenting any such evidence is when it argues that because the 35.30% all-others rate is much higher than dumping margins calculated for mandatory respondents in the original investigation and the four administrative reviews, it means the 35.30% rate bears no reasonable relationship to all-others rate companies' commercial reality. *See* Hor Liang Comments at 6-8.

However, Hor Liang ignored multiple AFA margins assigned to individual mandatory respondents in this history of this proceeding and downplayed a relatively high calculated margin of 27.69% for Unicatch in AR3 (merely 7.61% lower than the 35.30% all-others rate here). *See Certain Steel Nails From Taiwan: Final Results of Antidumping Duty Administrative Review and Partial Rescission of Administrative Review; 2015–2016*, 83 Fed. Reg. 6,163 (Dep't Comm. Feb. 13, 2018) (assigning an AFA rate of 78.17% to Bonuts); *Certain Steel Nails From Taiwan: Final Results of Antidumping Duty Administrative Review and Partial Rescission of Administrative*

*Review; 2016–2017*, 84 Fed. Reg. 11,506 (Dep't Comm. Mar. 27, 2019) (assigning an AFA rate of 78.17% to Bonuts); *Certain Steel Nails From Taiwan: Final Results of Antidumping Duty Administrative Review and Determination of No Shipments; 2017–2018*, 85 Fed. Reg. 14,635 (Dep't Comm. Mar. 13, 2020) (calculating a 27.69% margin for Unicatch); *Certain Steel Nails From Taiwan: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2018–2019*, 85 Fed. Reg. 76,014 (Dep't Comm. Nov. 27, 2020) (assigning AFA rates of 78.17% to Bonuts and PT, and all-others rate respondents including Unicatch). These AFA margins and the high margin calculated for Unicatch in AR3 show that the 35.30% all-others rate does bear some relationship to potential dumping margins of all-others rate companies, and reasonably reflect all-others rate companies' economic reality. *See also* Final Remand Results at 17-19.

Furthermore, a similar argument was rejected in *Mid Continent Steel & Wire, Inc. v. United States*, 321 F.Supp.3d 1313 (CIT 2018). In that case, Mid Continent argued that the separate rate, which was based on one mandatory respondent's (Stanley) dumping margin because the other mandatory respondent received a total AFA rate, was unreasonable as applied and did not reflect the potential dumping margins of separate rate companies, because Stanley's rate had been much lower than rates calculated for other individually examined respondents in all previous reviews. *See Mid Continent*, 321 F.Supp.3d at 1322-1323. The CIT rejected this argument, finding that the rates assigned to non-Stanley respondents in previous reviews did not demonstrate that the general rule was unreasonable as applied, because each administrative review stands on its own based on the unique facts on the record for each review, and because only two of the seventeen separate rate companies had been individually examined before in reviews that occurred several years prior to the review on appeal. *Id.* at 1323-1324. Similarly,

here, lower all-others rates or lower calculated margins in past reviews do not demonstrate that the general rule was unreasonable as applied, and it is difficult to see how the prior rates are probative of the non-selected companies' dumping during the POR when neither of them has been previously examined.

Therefore, similar to *Solianus* and *Mid Continent*, Hor Liang has not presented any substantial evidence that the all-others rate calculated under the expected method is not reasonably reflective of their potential dumping margins, so that Commerce should deviate from the expected method.

Hor Liang also argues that Commerce should exclude Bonuts' AFA rate from the all-others rate calculation because Bonuts is allegedly not a representative respondent.  *See* Hor Liang Comments at 9.  This argument is without merit and would in fact run afoul of the statutory language, the legislative history, and judicial precedent, none of which supports the exclusion of a mandatory respondent's margin from the calculation of the all-others rate simply because Bonuts declared itself to be non-representative of Taiwanese nail producers.  *See also* Final Remand Results at 20-21.

### III. CONCLUSION

For the reasons discussed above, Mid Continent supports Commerce's recalculated all-others rate of 35.30% assigned to the non-individually examined respondents based on a weighted average of the dumping margins received by individually examined respondents. Commerce has provided adequate explanations for why its determination is in accordance with law and supported by substantial evidence, and its *Final Remand Results* should be affirmed.

Respectfully submitted,

*/s/ Adam H. Gordon*
Adam H. Gordon
Ping Gong
**THE BRISTOL GROUP PLLC**
1707 L Street, NW
Suite 570
Washington, DC 20036

*Counsel to Mid Continent Steel & Wire, Inc.*

Dated: January 12, 2022

## CERTIFICATE OF COMPLIANCE

Pursuant to Chamber Procedure 2(B)(1), the undersigned certifies that these comments comply with the word limitation requirement. The word count for Defendant-Intervenor Mid Continent Steel & Wire, Inc.'s Comments in Support of Final Remand Results, as computed by The Bristol Group PLLC's word processing system Microsoft Word 2016, is 2,883 words, less than the 3,000 word limit set by the Court's Slip Op. 21-93 (CM/ECF Doc. No. 126).

*/s/ Adam H. Gordon*
Adam H. Gordon
**THE BRISTOL GROUP PLLC**
*Counsel to Mid Continent Steel & Wire, Inc.*

Dated: January 12, 2022

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 12th day of January, 2022, I electronically filed a copy of the forgoing using the CM/ECF system, which sent a notification of such filing to counsel of record for all parties.

*/s/ Adam H. Gordon*
Adam H. Gordon