# UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

| | |
|---|---|
| PRO-TEAM COIL NAIL ENTERPRISE INC., AND PT ENTERPRISE INC., | ) ) ) |
| Plaintiffs, | ) ) |
| UNICATCH INDUSTRIAL CO., LTD., TC INTERNATIONAL, INC., HOR LIANG INDUSTRIAL CORP., ROMP COIL NAILS INDUSTRIAL INC., AND PRIMESOURCE BUILDING PRODUCTS, INC., | ) ) ) ) ) ) |
| Consolidated Plaintiffs, | ) ) |
| and | ) ) |
| S.T.O. INDUSTRIES, INC., | ) ) |
| Plaintiff-Intervenor, | ) ) |
| v. | ) ) |
| UNITED STATES, | ) ) |
| Defendant, | ) ) |
| and | ) ) |
| MID CONTINENT STEEL & WIRE, INC., | ) ) |
| Defendant-Intervenor. | ) |

Consol. Court No. 18-00027
PUBLIC VERSION

## ORDER

Upon consideration of plaintiffs' comments regarding the third remand redetermination, defendant's response thereto, and all other pertinent papers, it is hereby

ORDERED that the third remand redetermination is sustained; and it is further

ORDERED that final judgment is entered in favor of the United States.

Date:_____                                             _____
    New York, NY                                                                Chief Judge

# UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

| | |
|---|---|
| PRO-TEAM COIL NAIL ENTERPRISE INC., AND PT ENTERPRISE INC., | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| UNICATCH INDUSTRIAL CO., LTD., TC INTERNATIONAL, INC., HOR LIANG INDUSTRIAL CORP., ROMP COIL NAILS INDUSTRIAL INC., AND PRIMESOURCE BUILDING PRODUCTS, INC., | )<br>)<br>)<br>)<br>)<br>) |
| Consolidated Plaintiffs, | )<br>) |
| and | ) |
| S.T.O. INDUSTRIES, INC., | ) |
| Plaintiff-Intervenor, | ) |
| v. | ) Consol. Court No. 18-00027 |
| UNITED STATES, | ) PUBLIC VERSION |
| Defendant, | ) |
| and | ) |
| MID CONTINENT STEEL & WIRE, INC., | ) |
| Defendant-Intervenor. | ) |

## DEFENDANT'S RESPONSE TO THE PARTIES' COMMENTS UPON THE DEPARTMENT OF COMMERCE'S REMAND REDETERMINATION

Defendant, the United States, respectfully submits this response to the comments submitted by Hor Liang Industrial Corp. (Hor Liang) and Romp Coil Nails Industries Inc. (Romp), ECF No. 129, concerning the third remand redetermination filed by the United States

Department of Commerce (Commerce), ECF No. 127, pursuant to the opinion and remand order by this Court. *See Pro-Team Coil Nail Enterprise, Inc. v. United States*, 532 F. Supp. 3d 1281 (Ct. Int'l Trade 2021) (third remand order). Commerce's remand redetermination fully complies with the Court's third remand order, and the non-examined plaintiffs cannot demonstrate that the redetermination is unlawful or unsupported by substantial evidence. Accordingly, the Court should sustain the remand redetermination.

## BACKGROUND

### I. The Court's Third Remand Order

In its third remand order, the Court affirmed Commerce's corroboration and selection of the 78.17 percent adverse facts available (AFA) rate applied to plaintiff Unicatch Industrial Co., Ltd. and TC International, Inc. (collectively, Unicatch). Third Remand Order at 10-15. The Court also agreed that Commerce could correct a ministerial error and include the rate of mandatory respondent Bonuts Hardware Logistics Co., Ltd. (Bonuts) in calculating the rate for non-selected companies. *Id.* at 21 n.13. The Court, however, held that Commerce had departed from the expected method for calculating the rate for non-examined respondents (*i.e.*, what the Court has referred to as the "all-others rate") without explaining why it could not rely on certain U.S. Customs and Border Protection (CBP) import volume data for Bonuts that was on the record, and thus use the expected method. *Id.* at 20. Accordingly, and because Commerce did not otherwise explain its departure from the expected method, the Court held that the departure was not supported by substantial evidence, and remanded for Commerce to reconsider or further explain its departure. *Id.* at 20-22. The Court did not address the non-examined plaintiffs' contention that the all-others rate was not reasonably reflective of their potential dumping

2

margins, but stated that any arguments in that vein should be raised on remand. *Id.* at 21.

## II. Results Of Third Remand Redetermination

On September 15, 2021, Commerce issued a draft remand redetermination in which it continued to use a simple average to calculate the rate for non-selected respondents. Draft Remand Redetermination, P.R.R. 1, C.R.R. 1 at 1-2. On September 22, 2021, the parties submitted timely comments. Hor Liang and Romp Draft Comments, P.R.R. 2, C.R.R. 2; Mid Continent Draft Comments, P.R.R. 3. On October 13, 2021, Commerce issued its final third remand redetermination, in which it determined that it *could* rely on the CBP data and use the expected method to calculate the all-others rate by a weighted average of the rates of the three mandatory respondents. Third Remand Redetermination at 2, 4.

With regard to the non-examined plaintiffs' argument against Commerce's application of the simple average methodology to calculate the all-others rate, Commerce deemed the argument moot because it had decided to rely on the expected method and use a weighted average instead. Third Remand Redetermination at 15. Commerce then addressed the non-examined plaintiffs' contention that the AFA rate for Bonuts should not be included in calculating the rate for non-examined respondents, finding that including the margins of all three mandatory respondents was reasonable, appropriate, and in accordance with precedent, and that substantial evidence did not detract from use of the expected method. *Id.* at 15-21. Accordingly, Commerce calculated an all-others rate of 35.30 percent. *Id.* at 17.

## ARGUMENT

Commerce complied with the Court's remand order by reconsidering its calculation of the rate for non-examined companies and using the CBP data to employ the expected method.

3

Third Remand Order at 21. The remand redetermination is supported by substantial evidence and is in accordance with law; as such, this Court should sustain it.

I. **Standard Of Review**

"The same standard of review applies to the review of a remand determination as to the review of the original determination." *Bethlehem Steel Corp. v. United States*, 223 F. Supp. 2d 1372, 1375 (Ct. Int'l Trade 2002). Accordingly, the "court will sustain {Commerce's} determination upon remand if it complies with the court's remand order, is supported by substantial evidence on the record, and is otherwise in accordance with law." *Amanda Foods (Vietnam) Ltd. v. United States*, 774 F. Supp. 2d 1286, 1290 (Ct. Int'l Trade 2011).

II. **Commerce's Recalculation Of The Non-Selected Respondents' Rate Is Supported By Substantial Evidence And Is In Accordance With Law**

  A. **Relevant Legal Framework**

Pursuant to 19 U.S.C. § 1673d(c)(5)(A), Commerce will calculate an all-others rate by taking a weighted average of dumping margins assigned to the mandatory respondents, excluding those margins that are zero, *de minimis*, or determined entirely on the basis of AFA. However, where dumping margins for all individually-examined entities are zero, *de minimis*, or determined based entirely on AFA, Commerce "may use any reasonable method to establish the estimated all-others rate for exporters and producers not individually investigated, including averaging the estimated weighted average dumping margins determined for exporters and producers individually investigated." 19 U.S.C. § 1673(c)(5)(B). The Statement of Administrative Action (SAA) directs that, when the dumping margin for all individually-investigated entities are determined entirely on the basis of facts available or are zero or *de minimis*, "{t}he expected method in such cases will be to weight-average the zero and de

minimis margins and margins determined pursuant to the facts available, provided that volume data is available." Statement of Administrative Action accompanying the Uruguay Round Agreements Act, H.R. Rep. No. 103-316, at 873 (1994) as reprinted in 1994 U.S.C.C.A.N. 4040.

The Court of Appeals for the Federal Circuit has upheld Commerce's application of the expected method in administrative reviews, explaining that the general assumption underlying the statutory framework is that "the individually examined respondents account for a majority of the market during the relevant period, and are representative at the very least in terms of aggregate volume." *Albemarle Corp. & Subsids. v. United States*, 821 F. 3d 1345, 1353 (Fed. Cir. 2016); *see also* 19 U.S.C. § 1677f-1(c)(2) (allowing Commerce to limit its examination exporters or producers, which accounts for the largest volume of subject merchandise that can be reasonably examined, when it is not practicable for Commerce to examine each company individually). "The very fact that the statute contemplates using data from the largest volume exporters suggests an assumption that those data can be viewed as representative of all exporters." *Albemarle*, 821 F.3d at 1353; *see also Changzhou Hawd Flooring Co. v. United States*, 848 F. 3d 1006, 1012 (Fed. Cir. 2017) ("Thus, the mandatory respondents in this matter are assumed to be representative."). "The statute assumes that, absent such evidence, reviewing only a limited number of exporters will enable Commerce to reasonably approximate the margins of all known exporters." *Albemarle*, 821 F. 3d at 1353. The Federal Circuit further explained that, to divert from the expected method, substantial evidence must demonstrate that that the non-examined companies' dumping behavior would be different than that of the mandatory respondents. *Id.*; *see also Changzhou Hawd*, 848 F. 3d at 1012 ("Under *Albemarle*, Commerce could not deviate from the expected method unless it found, based on substantial

evidence, that the separate rate firms' dumping is different from that of the mandatory respondents.").

### B. Hor Liang And Romp Do Not Put Forth Substantial Evidence That The All-Others Rate Is Not Reasonably Reflective

Commerce calculated the rate for the non-examined companies using a weighted average of the *de minimis* and AFA rates of the mandatory respondents. Third Remand Redetermination at 8. In doing so, Commerce adhered to the expected method, the statutory framework, and relevant binding precedent; thus, its determination was lawful and should be upheld.

The non-examined plaintiffs claim that the expected method results in a rate not reasonably reflective of their potential margins. Hor Liang and Romp Comments at 6. But, as recognized in *Albemarle*, the rates of the examined respondents are *assumed* to be representative of the non-examined respondents, particularly when no evidence on the record disputes that assumption. *Id.*, 821 F.3d at 1355. And, as Commerce determined, no substantial record evidence demonstrates that the rate applied to the non-examined companies is not reasonably reflective of their potential dumping margins. Third Remand Redetermination at 16.

In arguing the converse, the non-examined plaintiffs rely on *Bosun Tools Co. v. United States*, 463 F. Supp. 3d 1309, 1318-19 (Ct. Int'l Trade 2020), to look to the rates calculated for respondents in previous and subsequent segments of the proceedings.[1] HL/Romp Comments at 7-8. However, that case is distinguishable and does not lead to the conclusion hoped for by the

---

[1] Subsequent to the filing of plaintiffs' comments, the Federal Circuit entered a non-precedential opinion in the appeal of *Bosun*, affirming this Court's judgment. *See Bosun Tools Co., Ltd. v. United States*, __ 4.th __, 2022 WL 94172 (Fed. Cir. Jan. 10, 2022). The Federal Circuit held that relying on an AFA rate in the calculation of a separate rate is not only permitted, but expected, pursuant to the SAA, and that the rate was supported by substantial evidence. *Id.* at *3-5.

non-examined plaintiffs. Unlike in *Bosun*, neither Hor Liang nor Romp have been individually examined in any segment of this proceeding. Moreover, Hor Liang and Romp also studiously ignore that rates based on total AFA have been frequently assigned to mandatory respondents throughout the history of the order, and that the rates for particular respondents have fluctuated greatly between segments. *See* Third Remand Redetermination at 19. Despite efforts to do so, there is no compelling reason to suppose that AFA rates assigned to mandatory respondents are less representative than zero rates or *de minimis* ones. Simply put, there is no evidence or logic to presume that a respondent, once selected for individual review, will fully cooperate.

The non-examined plaintiffs cite a string of cases from the Federal Circuit and this Court – namely, *Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370 (Fed. Cir. 2013), *Changzhou Wujin Fine Chem. Factory Co., Ltd. v. United States*, 701 F.3d 1367 (Fed. Cir. 2012), *Baroque Timber Indus. (Zhongshan) Co. v. United States*, 971 F. Supp. 2d 1333 (Ct. Int'l Trade 2014), *Shenzhen Xinboda Industrial Co. Ltd. v. United States*, 180 F. Supp. 3d 1305 (Ct. Int'l Trade 2016), *Navneet Publications (India) Ltd. v. United States*, 999 F. Supp. 2d 1354 (Ct. Int'l Trade 2014), *Linyi Chengen Imp. & Exp. Co. v. United States*, 487 F. Supp. 3d 1349 (Ct. Int'l Trade 2020), and *GODACO Seafood Joint Stock Co. v. United States*, 494 F. Supp. 3d 1294 (Ct. Int'l Trade 2021) – that purportedly support their assertion that Commerce's use of the expected method was unreasonable. *See* Hor Liang and Romp Comments at 2-5. But these cases are either inapposite or distinguishable. For example, in *Bestpak*, *Baroque Timber*, *Shenzhen*, *Linyi*, and *GODACO*, Commerce actually *departed* from the expected method rather than *adhering* to it, as it did here. *Bestpak*, 716 F.3d at 1375; *Baroque Timber*, 971 F. Supp. 2d at 1344; *Shenzhen,* 180 F. Supp. 3d at 1321; *Linyi,* 487 F. Supp. 3d at 1359; *GODACO*, 494 F.

7

Supp. 3d at 1305. In *Changzhou,* the Federal Circuit rejected Commerce's use of a hypothetical AFA rate that had not been actually applied to a mandatory respondent, but explicitly sanctioned the use of actual AFA rates in Commerce's calculation. *Id.*, 701 F.3d at 1375. And in *Navneet*, the Court held that Commerce's averaging of mandatory respondent rates with those of non-mandatory, uncooperative respondents who did not respond to quantity and value questionnaires for the purposes of respondent selection unsupported by record evidence. *Id.*, 999 F. Supp. at 1363. Here, Commerce only averaged the rates for the mandatory respondents, not adding in the rates of any other non-selected respondents.

The non-examined plaintiffs proffer a flurry of other assorted arguments, but none of them undermine Commerce's employment of the expected method to calculate the all-others rate. First, they object to the use of an AFA rate originally derived from the petition, despite the Court's upholding such a rate earlier in this litigation. Hor Liang and Romp Comments at 6. Because Commerce's application of the AFA rate to Unicatch and Bonuts is lawful, Commerce should use those rates in adhering to the expected method, unless substantial evidence dictates otherwise, which we have already established it does not. Indeed, the SAA directly contemplates using AFA rates. SAA at 873. Thus, consistent with the SAA and the relevant statute, Commerce is permitted to use AFA rates derived from the petition in calculating the all-others rate pursuant to the expected method.

The non-examined plaintiffs also attempt to rebut Commerce's determination that evidence demonstrates that dumping is occurring above the all-others rate of 35.30 percent. Hor Liang and Romp Comments at 8-9 (citing Third Remand Redetermination as 17). But this misses the fact that record evidence, in the form of [ ] transaction-specific margins, actually

8

shows that dumping is occurring above the 35.30 percent rate *in this review*. Third Remand Redetermination at 17 (citing Third Remand Order at 10-13). Although the Court determined that it did not need to address Unicatch's objections to Commerce's use of the component method, Commerce had also examined the range of transaction-specific normal values and net U.S. prices upon which the petition rate is based, and found that the normal value and net U.S. prices used for the petition rate were well within the range of normal value and U.S. transactions reported by Pro-Team. Third Remand Order at 13 n.9. The non-examined plaintiffs urge the Court to look only to the rates from other segments of the proceeding, but do not explain how rates from other reviews are more probative than record evidence from *this* review.

The non-examined plaintiffs also argue that Bonuts's data should have been excluded because it was not a representative respondent. Hor Liang and Romp Comments at 9. But the "evidence" in favor of plaintiffs' theory consists of unsupported statements previously made by Pro-Team and Bonuts, and not accepted by Commerce. *Id*. Indeed, regarding Pro-Team's comments, Commerce determined that [redacted] are subject to the antidumping duties under the order when they [redacted] [redacted]. Respondent Selection Memorandum (Nov. 29, 2016) at 7-8, P.R. 38, C.R. 6. Moreover, Pro-Team's claim about [redacted] was a challenge to the CBP data and whether [redacted] [redacted]. Pro-Team CBP Comments (October 6, 2016), P.R. 31, C.R. 3. Such arguments concern whether [redacted] [redacted] Commerce thus determined that there was insufficient evidence to suggest CBP data relating to entries [redacted] are unreliable. Respondent Selection Memorandum at 8. Commerce also found that CBP data could feasibly be used as facts

9

available under 19 U.S.C. § 1677e(a) to calculate a weighted average when the reported volume data is missing from the record. Third Remand Redetermination at 8. Additionally, Commerce found Pro-Team's claims that ■■■■■■■■■■■■■■■■■■■■■■■■■ to not be substantiated. Respondent Selection Memorandum at 8. For its own submission, Bonuts did not submit any evidence to support its claims. Consequently, Commerce found that Bonuts's claims were unpersuasive, keeping Bonuts as a mandatory respondent and applying AFA rather than deselecting it as a mandatory respondent, as requested. PDM at 11-12; IDM at 1. *See also* Third Remand Redetermination at 20. Because mandatory respondents are representative and there was no record evidence to support claims otherwise, Commerce appropriately included Bonuts's rate in calculating the non-examined respondents' rate.

Finally, the non-examined plaintiffs suggest reopening the record to allow them to place information showing that the rates are not reasonably reflective. Hor Liang and Romp Comments at 11. But, as plaintiffs and the Court are aware, Commerce is not required to reopen the record on remand. Commerce found that because "no additional information is required for Commerce to determine the rate for the non-individually examined respondents," reopening the record was unnecessary. Third Remand Redetermination at 19. This determination is within Commerce's discretion and should not be disturbed. *See, e.g., Shandon Rongxin Imp. & Exp. Co. v. United States*, 203 F. Supp. 3d 1327 (Ct. Int'l Trade 2017).

## CONCLUSION

For these reasons, we respectfully request that the Court sustain Commerce's remand redetermination and enter judgment in favor of the United States.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  |  |
|  | BRIAN M. BOYNTON<br>Acting Assistant Attorney General |
|  |  |
|  | /s/Patricia M. McCarthy<br>PATRICIA M. McCARTHY<br>Director |
|  |  |
| OF COUNSEL:<br>VANIA WANG<br>Attorney<br>U.S. Department of Commerce<br>Office of the Chief Counsel For Trade<br>　　Enforcement and Compliance<br>1401 Constitution Avenue, NW<br>Washington, D.C. 20230<br>Tel: (202) 482-6035<br>Email: vania.wang@trade.gov | /s/Sosun Bae<br>SOSUN BAE<br>Senior Trial Counsel<br>U.S. Department of Justice<br>Civil Division<br>Commercial Litigation Branch<br>P.O. Box 480<br>Ben Franklin Station<br>Washington D.C. 20044<br>Tel: (202) 305-7568<br>Fax: (202) 514-7965<br>Email: Sosun.Bae@usdoj.gov |
|  |  |
| January 12, 2021 | Attorneys for Defendant |

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 12th day of January, 2022, I electronically filed a copy of the foregoing using the CM/ECF system, which sent a notification of such filing to counsel of record.

/s/Sosun Bae

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing brief complies with the word-count limitation set forth by the Court, in that it contains 2,719 words according to the word-count function of the word-processing software used to prepare the memorandum, including text, footnotes, and headings.

/s/Sosun Bae